Kelly D. GLOSSIP, Appellant,

v.

**MISSOURI DEPARTMENT OF TRANSPORTATION AND HIGHWAY PATROL EMPLOYEES' RETIREMENT SYSTEM, Respondent.**

No. SC 92583.

Supreme Court of Missouri,
En Banc.

Oct. 29, 2013.

Maurice B. Graham, Gray, Ritter & Graham PC, St. Louis; Anthony E. Rothert and Grant R. Doty, ACLU of Eastern Missouri, St. Louis; Stephen Douglas Bonney, ACLU Foundation of Kansas and Western Missouri, Kansas City; Roger K. Heidenreich, SNR Denton US LLP, St. Louis; John A. Knight, LGBT & AIDS Project of the ACLU Foundation, Chicago, IL; and Joshua A. Block, LGBT & AIDS Project of the ACLU Foundation, New York, NY, for Glossip.

James R. Ward and Emily A. Dodge, Attorney General's Office, Jefferson City, for the State.

Michael J.F. Byrne, Law Firm of Haden & Byrne, Columbia, and Stephen Sanders, University of Michigan Law School, Ann Arbor, Mich., for group of Missouri law professors as friends of the Court.

Harold L. Lowenstein, Richard B. Scherrer, Thomas B. Weaver and Winston E. Calvert, Armstrong Teasdale LLP, St. Louis, for certain current and former elected officials as friends of the Court.

Juliet A. Cox and M. Courtney Koger, Kutak Rock, Kansas City; Christopher R. Cox, Lambda Legal Defense and Education Fund Inc., Chicago, IL, for Law Enforcement Gays and Lesbians (LEGAL) International and its affiliated chapters as friends of the Court.

Denise D. Lieberman, St. Louis, for PROMO as friends of the Court.

## PER CURIAM.

This case does not involve a challenge to the Missouri Constitution's ban on same-sex marriage. That is an issue for another day. Instead, Kelly Glossip, the same-sex partner of a deceased highway patrolman, presents a challenge to two statutes. The first provides benefits to a surviving spouse of a state highway patrolman who is killed in the line of duty. The second statute provides that the word "spouse" in the first statute shall refer only to a marriage between a man and a woman.

Glossip was denied survivor benefits and appeals the circuit court judgment affirming the administrative decision. He asserts that the survivor benefits statute violates his equal protection rights under the Missouri Constitution by denying him benefits due to his sexual orientation. He also claims it is an unconstitutional special law. This Court rejects these claims.

Glossip was denied benefits because he and the patrolman were not married, not because of his sexual orientation. The survivor benefits statute provides benefits only to the patrolman's surviving spouse or surviving minor children. Glossip acknowledges that this provision denies benefits to all unmarried couples regardless of whether the patrolman and the survivor seeking benefits were of the same or opposite sex. If Glossip and the patrolman had been of different sexes, Glossip would have still been denied benefits no matter how long or close their relationship had been. The result cannot be any different here simply because Glossip and the patrolman were of the same sex. The statute discriminates solely on the basis of marital status, not sexual orientation.

Glossip maintains that he and his partner did not marry because Missouri law prohibits same-sex marriage. This is true, but the benefits statutes that Glossip challenges do not prohibit same-sex marriage. That ban is in Missouri's constitution, and Glossip expressly does not challenge it. Accordingly, he cannot use that ban as support for his challenge to the benefits statutes, which discriminate on the basis of marital status.

For these reasons, this case is decided on very narrow grounds. Glossip is not eligible for survivor benefits because he was not married to the patrolman. If Glossip and the deceased patrolman had been married in another state (or country), Glossip could have challenged the statute that prohibits recognizing same-sex marriages for purposes of Missouri benefits. But they were not. Glossip could have challenged Missouri's constitutional provision that precluded him and the patrolman from marrying here. But he did not. Therefore, these questions must go unanswered. The only decision the Court makes here has nothing to do with the

rights of same-sex partners. Instead, the Court merely upholds the General Assembly's right to award and deny survivor benefits based on whether the claimant was married to the patrolman at the time of death.

Neither the United States Supreme Court nor this Court has applied heightened scrutiny to laws requiring persons to be married to obtain benefits (as opposed to laws affecting the right to marry), so the survivor benefits statute is subject to rational basis review. Under this standard, the statute is constitutional because it is reasonably related to a legitimate state interest in efficiently assisting some of the people who are financially dependent on deceased patrolmen. Finally, this Court holds that because the survivor benefits statute is open-ended, it is not a special law. The circuit court's judgment is affirmed.[1]

## I. Factual and Procedural Background

On December 25, 2009, Corporal Dennis Engelhard, a nine-year veteran of the Missouri State Highway Patrol, was killed in the line of duty. At the time of his death, Glossip was Engelhard's same-sex domestic partner. Engelhard had no children.

Following Engelhard's death, Glossip applied to the Missouri Department of Transportation and Highway Patrol Employees' Retirement System ("MPERS") for survivor benefits under section 104.140.3, RSMo Supp.2002, which provides survivor benefits to the surviving spouse of a highway patrol employee who is killed in the line of duty. The application for survivor benefits asked Glossip to submit a copy of a valid driver's license, a death certificate, and a marriage license. Glossip submitted his driver's license, Engelhard's death certificate, and an affidavit describing his relationship with Engelhard. Glossip's affidavit acknowledged that he and Engelhard were never married, but stated that they had cohabitated in a same-sex relationship since 1995. He further stated that they "held [themselves] out to [their] families and [their] community as a couple in a committed, marital relationship" and "would have entered into a civil marriage if it were legal to do so in Missouri."

MPERS denied Glossip's application for survivor benefits. The denial letter stated that the denial was "based upon the lack of a valid marriage certificate and based upon Sections 104.012 and 451.022." Section 104.012, RSMo Supp.2001, provides that "for the purposes of public retirement systems administered pursuant to this chapter, any reference to the term 'spouse' only recognizes marriage between a man and a woman." Section 451.022, RSMo Supp. 2001, provides in relevant part that "[i]t is the public policy of this state to recognize marriage only between a man and a woman." Glossip appealed the denial to MPERS's Board of Trustees, but the appeal was also denied.

Glossip subsequently filed a petition requesting declaratory and injunctive relief in the circuit court. He argued that the

---

1. After this Court heard oral argument, the United States Supreme Court decided *United States v. Windsor*, —— U.S. ——, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013). The parties were asked to file additional briefs in light of this decision. *Windsor's* holding does not directly affect the analysis of the issues in this case. In *Windsor*, the surviving spouse of a *married* same-sex couple sought the marital exemption from the federal estate tax. Here, Glossip and the patrolman were not married. In *Windsor*, the plaintiff used the denial of benefits to challenge the federal law refusing to recognize same-sex marriages—and she succeeded. Here, Glossip tried the opposite, i.e., challenging the benefits law instead of the ban on same-sex marriages, and Glossip's claim fails.

survivor benefits statute and section 104.012 violate the Missouri Constitution's equal protection clause, Mo. CONST. art. I, sec. 2, by excluding him from survivor benefits because of his sexual orientation. He further contended that these sections violate the constitutional proscription against special laws, Mo. CONST. art. III, sec. 40. Glossip does not challenge the Missouri Constitution's ban on same-sex marriage, Mo. CONST. art. I, sec. 33, or its statutory counterpart, section 451.022.

MPERS moved to dismiss Glossip's amended petition on the ground that it failed to state a claim for which relief could be granted, and Glossip moved for summary judgment. The trial court granted MPERS's motion to dismiss, dismissed Glossip's motion for summary judgment as moot, and dismissed his amended petition with prejudice. Glossip timely appealed. This Court has jurisdiction. Mo. CONST. art. V, sec. 3.

## II. Standard of Review

■ This case comes to the Court on the grant of a motion to dismiss for failure to state a claim. The standard of review in such a case is *de novo*. *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008). Glossip's petition raises two pure questions of law that are relevant to his appeal: (1) do the survivor benefits statute and section 104.012 unconstitutionally discriminate against Glossip based on his sexual orientation; and (2) are these sections unconstitutional special laws?

## III. Equal Protection

Glossip contends that section 104.140.3, the survivor benefits statute, and section 104.012 violate the Missouri Constitution's equal protection clause in that they discriminate on the basis of sexual orientation and are not sufficiently related to an adequate government purpose to survive the

appropriate level of equal protection scrutiny. Significantly, he does not challenge Missouri's constitutional and statutory provisions banning same-sex marriage. Instead, Glossip argues that the survivor benefits statute and section 104.012 unconstitutionally exclude him from eligibility for benefits.

■ Statutes are presumed constitutional. *Beard v. Mo. State Employees' Ret. Sys.*, 379 S.W.3d 167, 170 (Mo. banc 2012). This Court will construe a statute in favor of its constitutional validity, and a statute will not be invalidated on constitutional grounds unless it clearly and undoubtedly violates a constitutional provision. *Id.* The party challenging a statute's validity bears the burden of proving the statute clearly and undoubtedly violates the constitution. *Id.*

■ The equal protection clause of the Missouri Constitution provides "that all persons are created equal and are entitled to equal rights and opportunity under the law." Mo. CONST. art. I, sec. 2. Determining whether a statute violates equal protection involves a two-part analysis. First, the Court determines whether the statute contains a classification that "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution." *In re Marriage of Kohring*, 999 S.W.2d 228, 231–32 (Mo. banc 1999). If so, the Court will apply strict scrutiny, and the statute will be invalid unless it serves compelling state interests and is narrowly tailored to meet those interests. *Weinschenk v. State*, 203 S.W.3d 201, 211 (Mo. banc 2006). If the statute does not disadvantage a suspect class or impair a fundamental right, in most cases the Court will apply rational basis scrutiny, and the statute will be valid as long as it bears a reasonable relationship to a legitimate state purpose. *Alder-*

*son v. State,* 273 S.W.3d 533, 537 (Mo. banc 2009). In some circumstances, such as in cases involving gender discrimination, the United States Supreme Court has also recognized and applied an intermediate level of scrutiny. *See United States v. Virginia,* 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). In such cases, the state has the burden of demonstrating that the statute serves important government interests and is substantially related to achieving those interests. *Miss. Univ. for Women v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982).

## A. The Challenged Statutes

Section 104.140 provides for the distribution of benefits upon a highway patrol employee's death prior to retirement. Subsections 1 and 2 provide a death benefit based on the duration of the employee's service, while subsection 3 provides a minimum death benefit on behalf of an employee who dies in the line of duty.[2] All of the

death benefits provided under section 104.140 are payable to a deceased employee's "surviving spouse, to whom the [employee] was married on the date of the [employee's] death," or, if there is no surviving spouse, the employee's surviving children under the age of 21.

While the General Assembly has modified the death benefit payable on behalf of highway patrol employees who die before retirement several times since it was first enacted in 1969, a common provision has been a benefit to the deceased employee's surviving spouse.[3] The definitions section of chapter 104, section 104.010, RSMo, has never defined the term "spouse." In 2001, however, the General Assembly enacted section 104.012, which provides that "[f]or the purposes of public retirement systems administered pursuant to this chapter, any reference to the term 'spouse' only recognizes marriage between a man and a woman."[4]

2. Section 104.140.1 provides a death benefit payable on behalf of an employee with more than five years of creditable service in an amount equal to 50 percent of the deceased employee's retirement annuity. Subsection 2 provides a similar death benefit payable on behalf of an employee with fewer than five years but more than three years of creditable service in the amount of 25 percent of the deceased employee's retirement annuity. In contrast, subsection 3 provides a minimum death benefit of half the deceased employee's final average compensation for statutory beneficiaries of highway patrol employees who die in the line of duty regardless of the duration of the employee's service.

3. Section 104.140 was originally enacted in 1955 when the General Assembly created MPERS. *See* 1955 Mo. Laws 718. Initially, the statute did not provide a true "death benefit" but merely designated how the deceased employee's accumulated retirement contributions would be distributed. 1955 Mo. Laws 727. In 1969, the General Assembly amended the statute and created a true death benefit in an amount equal to 50 percent of the employee's retirement annuity. 1969 Mo.

Laws 177–78. The death benefit was payable only to a surviving spouse who was married to the employee at the time of death, and it terminated upon the surviving spouse's remarriage. In 1976, the General Assembly repealed the original death benefit and enacted a new 50 percent retirement annuity death benefit with additional limitations. 1976 Mo. Laws 637–38. To receive the death benefit, a surviving spouse had to have been married to the deceased employee for at least two years on the date of death, and the deceased employee must have specifically designated the spouse as the beneficiary. In addition, children under age 21 were eligible to receive the newly-enacted death benefit, but only if there was no qualifying surviving spouse and the deceased member designated the children as beneficiaries. Subsequent legislation repealed the provisions terminating a surviving spouse's benefits upon remarriage, requiring the employee to specifically designate beneficiaries, and restricting the benefit based on the length of marriage.

4. *This section was enacted five years after the General Assembly enacted section 451.022, the first statute defining a valid marriage as*

## B. Glossip Has Standing to Challenge the Survivor Benefits Statute, but Glossip Lacks Standing to Challenge Section 104.012

 Before proceeding to the merits of Glossip's equal protection claim, it must be determined whether Glossip has standing. *Mo. State Med. Ass'n v. State*, 256 S.W.3d 85, 87 (Mo. banc 2008). Standing requires that a party have "some legally protectable interest in the litigation so as to be directly and adversely affected by its outcome." *Schweich v. Nixon*, 408 S.W.3d 769, 775 (Mo. banc 2013) (quoting *Ste. Genevieve Sch. Dist. R–II v. Bd. of Aldermen of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002)). This Court reviews standing *de novo. Id.* at 773–75. Generally speaking, standing requires the plaintiff to prove that he has a personal stake or legally protectable interest; that this interest is at risk from a threatened or actual injury; and that this interest will be directly and materially affected by the outcome of the litigation. *Id.* at 773–775.

 In the context of an equal protection challenge to a statute, standing requires the plaintiff to: (1) identify a statutory classification that distinguishes between similarly-situated persons in the exercise of a right or the receipt of a benefit; (2) show that the plaintiff is a member of the disadvantaged class; and (3) demonstrate that, but for the challenged classification, the plaintiff would be eligible for the right or benefit. *State v. Young*, 362 S.W.3d 386, 396 (Mo. banc 2012); *Silcox v. Silcox*, 6 S.W.3d 899, 903 (Mo. banc 1999); *Lester v. Sayles*, 850 S.W.2d 858, 872–73 (Mo. banc 1993).

 Glossip has standing to challenge the survivor benefits statute, section 104.140.3. He argues that the statute distinguishes between similarly-situated people in providing survivor benefits by requiring that a person be married to a patrolman at the time of the latter's death to qualify as a beneficiary. His amended petition alleged that he was the functional equivalent of Engelhard's spouse and that he would be eligible for survivor benefits but for the spousal requirement. Because Glossip is within the class of persons he alleges is unconstitutionally denied benefits, he has standing to challenge the survivor benefits statute.

 Glossip, however, does not have standing to challenge the ban on benefits for same-sex married couples, section 104.012, because he is not a member of the class of persons disadvantaged by that statute. *See Lester*, 850 S.W.2d at 873. That statute only recognizes marriage between a man and a woman for the purpose of determining who is a "spouse" under the public retirement benefits statutes. While the survivor benefits statute imposes a threshold spousal requirement that must be met to qualify for survivor benefits, section 104.012 further limits qualifying spouses to partners in an opposite-sex marriage. The latter statute does not distinguish between same-sex couples and opposite-sex couples generally, but only between same-sex and opposite-sex *married* couples.

In other words, a person must first meet the survivor benefits statute's threshold

---

that between a man and a woman. *See* 2001 Mo. Laws 1351; 1996 Mo. Laws 747. In 2001, the General Assembly added subsection 4 to section 451.022, which provides that "a marriage between persons of the same sex will not be recognized for any purpose in this state even when valid where contracted."

2001 Mo. Laws 358. Section 104.012 was followed three years later by the adoption of Mo. Const. art. I, sec. 33, which provides "[t]hat to be valid and recognized in this state, a marriage shall exist only between a man and a woman." 2005 Mo. Laws 1599.

spousal requirement to come within the scope of section 104.012's ban on benefits for same-sex married couples. Here, Glossip did not satisfy the survivor benefits statute's spousal requirement because he was not married. *A fortiori,* the ban on benefits for same-sex married couples does not apply to Glossip, and he is not within the class of persons disadvantaged by the statute.[5]

Glossip has standing to challenge the survivor benefits statute, but he does not have standing to challenge the ban on benefits to same-sex married couples because he was not adversely affected by it. In that Glossip lacks standing to challenge section 104.012, this Court will not consider the merits of his claims concerning it.

## C. The Survivor Benefits Statute Does Not Discriminate on the Basis of Sexual Orientation

 Glossip argues that the survivor benefits statute violates the Missouri Constitution's equal protection clause because it discriminates against him on the basis of sexual orientation. Glossip's claim, however, fails at the threshold inquiry because the survivor benefits statute does not discriminate on the basis of sexual orientation. Instead, it draws a distinction on the basis of marital status.

The survivor benefits statute creates a death benefit on behalf of a highway patrol employee who dies in the line of duty in favor of the employee's surviving spouse to whom the employee was married at the time of death. The word "spouse" is defined as "joined in wedlock" or "married." Webster's Third New International Dictionary 2208 (1993). As such, the statute

imposes a threshold requirement for a prospective beneficiary: the person must have been married to the deceased employee at the time of the latter's death. If a prospective beneficiary fails to satisfy this condition, no benefit is available.

Glossip is not eligible for survivor benefits because he failed to satisfy the threshold spousal requirement. Under the plain language of the survivor benefits statute, to be entitled to the survivor benefit, a person must have been married to the deceased employee and survived him. Because Glossip was not married to Engelhard at the time of his death, he is not eligible for survivor benefits.

This case would require a different analysis if, as in the recent case of *United States v. Windsor,* —— U.S. ——, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013), Glossip and Engelhard had been married under the law of another state or jurisdiction. But that is not this case, and this Court must apply the law to the facts before it. *See State v. Self,* 155 S.W.3d 756, 760–61 (Mo. banc 2005). In this case, Glossip is not eligible for survivor benefits because he was not married. The question, then, is whether the state may constitutionally condition the receipt of benefits on marital status.

The dissent is incorrect in suggesting that this Court must decide whether the state may condition the receipt of benefits on marital status so long as that classification remains burdened by the ban on same-sex marriage. The dissent's concern with the survivor benefits statute is not the spousal requirement as such but rather the legal context, namely the burdens imposed on the spousal requirement by the

---

**5.** Furthermore, a declaration that the ban on benefits to same-sex married couples is unconstitutional could not redress Glossip's claimed injury, the denial of survivor benefits. Such a declaration could at most make same-

sex couples married under the law of another state eligible for survivor benefits. However, because Glossip was not married under the laws of another state, such a declaration would not affect him.

same-sex marriage ban. It would have the Court reach the issue whether conditioning the receipt of benefits on marital status is in fact sexual orientation discrimination and must be stricken on that basis. But this ignores the fact that Glossip specifically disclaimed any challenge to the ban on same-sex marriage, a fact that sets this case apart from the landmark civil rights cases cited by the dissent. Glossip was certainly free to make this choice, but it is fatal to his claim. This Court rejects the notion that the unchallenged constitutional and statutory provisions banning same-sex marriage nevertheless transform the survivor benefits statute's spousal requirement into sexual orientation discrimination.

## D. The Survivor Benefits Statute Is Subject to Rational Basis Scrutiny

■ In an equal protection case, this Court's first step is to determine whether the challenged statute disadvantages a suspect class or impinges on a fundamental right. *See In re Marriage of Kohring,* 999 S.W.2d at 232. If so, it is subject to strict scrutiny. If not, then it is subject to rational basis review unless intermediate scrutiny applies.

In this case, the survivor benefits statute excludes Glossip from eligibility for survivor benefits because he and Engelhard were not married. The United States Supreme Court has never held that marital status is a classification triggering heightened equal protection scrutiny. *See Eisenstadt v. Baird,* 405 U.S. 438, 446–47, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (invalidating a Massachusetts law denying unmarried persons access to contraceptives for want of a rational basis). Neither has this Court. *Cf. In re Marriage of Kohring,* 999 S.W.2d at 232 (holding there is no suspect class of "unmarried, divorced, or

legally separated persons"). Glossip does not contend the survivor benefits statute violates a fundamental right. *See In re Marriage of Woodson,* 92 S.W.3d 780, 783 (Mo. banc 2003) (finding no fundamental right to equitable division of retirement benefits upon dissolution of marriage). Glossip has cited no case holding that laws conditioning the receipt of benefits on marital status are subject to heightened scrutiny. Rational basis review applies in this case.

The dissent argues that this Court should apply heightened "intermediate" scrutiny in this case in light of the long history of discrimination against gays and lesbians. But, as just explained, Glossip is not eligible for survivor benefits because he is not a surviving spouse, not because he is gay. The cited cases just do not apply here, where the issue is discrimination based on marital status, not sexual orientation.

Had this case required this Court to determine the constitutionality of discrimination based on sexual orientation, it would be guided by federal law, for the Missouri Constitution's equal protection clause is coextensive with the Fourteenth Amendment, *see State v. Young,* 362 S.W.3d 386, 396 (Mo. banc 2012), and this Court has been reluctant to extend the scope of the Missouri Constitution's equal protection clause beyond that of its federal cognate. *See Comm. for Educ. Equal. v. State,* 294 S.W.3d 477, 490 (Mo. banc 2009); *In re Marriage of Kohring,* 999 S.W.2d at 232.

The United States Supreme Court left open the question of what level of scrutiny should apply to sexual orientation discrimination in *Windsor. See* 133 S.Ct. at 2696. There, as in *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), it took a tangential approach to the constitutionality of the challenged statute

and held that the statute failed even the most deferential level of scrutiny. *Windsor*, 133 S.Ct. at 2696. Neither of these cases identified what level of scrutiny applies to cases alleging discrimination based on sexual orientation. This Court also need not reach that issue here because the survivor benefits statute does not discriminate on the basis of sexual orientation, and Glossip has elected not to challenge Missouri's statutory and constitutional proscription against same-sex marriage.[6]

**E. The Survivor Benefits Statute's Spousal Requirement Bears a Reasonable Relation to Legitimate State Interests**

■ Here, the survivor benefits statute treats married and unmarried persons differently. As set out above, such a statutory classification does not involve a suspect class or burden a fundamental right. Accordingly, the statute at issue here is subject to rational basis review. *Mo. Prosecuting Attorneys & Circuit Attorneys Ret. Sys. v. Pemiscot Cnty.*, 256 S.W.3d 98, 102 (Mo. banc 2008). Under rational basis review, a statute will be valid as long as the classification is reasonably related to a legitimate state interest. *Alderson*, 273 S.W.3d at 537. "[A] classification is constitutional if any state of facts can be reasonably conceived that would justify it." *Id.* at 533. The party challenging the statute's validity has the burden of proving the lack of a rational basis. *Pemiscot Cnty.*, 256 S.W.3d at 102. Additionally, "legislation that touches only upon economic inter-

ests carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *In re Marriage of Kohring*, 999 S.W.2d at 233.

■ Here, the General Assembly could have reasonably concluded that limiting survivor benefits to spouses would serve the death benefit's intended purpose as well as the interests of administrative efficiency and controlling costs. Providing survivor benefits to persons who are economically dependent on a deceased state employee is a legitimate state interest, and the General Assembly could have reasonably concluded that the spousal requirement would serve that purpose. The General Assembly could reasonably conceive that there might be a greater incidence of economic interdependence among married couples than among unmarried couples. Furthermore, under Missouri law, spouses owe each other a duty of financial support, *see St. Luke's Episcopal–Presbyterian Hosp. v. Underwood*, 957 S.W.2d 496, 498 (Mo.App.1997), but no such duty exists for unmarried couples. Consequently, the General Assembly could have concluded that a spousal requirement would serve as a reasonable proxy for a person likely to depend on the deceased employee for support.

■ Glossip argues that the spousal requirement does not bear a reasonable relation to the purpose of assisting dependent persons because the category is both over-inclusive and under-inclusive. It may

---

**6.** The dissent's reliance on *State v. Walsh*, 713 S.W.2d 508, 511 (Mo. banc 1986), *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), and cases from other jurisdictions for the proposition that classifications based on sexual orientation should be subject to heightened scrutiny is misplaced. The Supreme Court in *Windsor* and *Lawrence* did not decide what level of scrutiny to apply,

and this Court is reluctant to expand the list of suspect classes and fundamental rights beyond those enumerated by that Court.

Additionally, Glossip limits his challenge to the Missouri Constitution's equal protection clause. The dissent does not address the impact of the Missouri Constitution's same-sex marriage ban on the rights afforded by the state constitution's equal protection clause.

be true that there are spouses of highway patrol employees who are not economically dependent on the employee and that there are non-spouses who are economically dependent on the employee. Rational basis review, however, does not require that the fit between the classification and government interest be exact, but merely "reasonable," and "this Court will not substitute its judgment for that of the legislature as to the wisdom, social desirability or economic policy underlying a statute." *Pemiscot Cnty.*, 256 S.W.3d at 102. It is reasonably conceivable that many spouses of highway patrol employees depend on their spouse's economic contributions. In light of the strong presumption in favor of a statute's validity, particularly a statute creating an economic interest, this Court cannot conclude that the spousal requirement is not reasonably related to the legitimate state interest of assisting dependent persons.

The spousal requirement also serves the interest of controlling costs. The General Assembly was free to provide survivor benefits to a larger class of beneficiaries, such as all people who could demonstrate any measure of financial dependence on the deceased employee. But it was not required to do so. Here, the General Assembly apparently believed that limiting survivor benefit beneficiaries to a smaller class of people would preserve MPERS's limited resources. Given that choice, the General Assembly was free to limit survivor benefits to a sub-class of those people who depend financially on deceased employees—as long as that classification does not require heightened scrutiny and bears a reasonable relationship to legitimate state interests. As discussed above, the spousal requirement is subject to rational basis review and is reasonably related to the purpose of assisting dependent persons. The cost savings realized by limiting survivor benefits to a smaller group of

people, here surviving spouses and minor children, provides additional support for the statute's rationality.

Finally, the spousal requirement serves the interest of administrative efficiency. The General Assembly could have reasonably anticipated that expanding survivor benefits beyond surviving spouses and surviving children could create a risk of competing claims and subjective eligibility determinations and that such claims would increase the time and cost necessary to resolve benefits claims. Accordingly, the General Assembly could have reasonably concluded that limiting the death benefit to spouses, rather than, for example, all committed or financially interdependent couples, would provide an objective criterion for the efficient resolution of claims. Where, for the reasons already noted, the statute is subject only to rational basis review rather than to heightened scrutiny, such administrative considerations are reasonable.

Glossip argues that the spousal requirement must fail even rational basis scrutiny because the statute was motivated by a desire to harm gays and lesbians. Glossip cites the United States Supreme Court's recent decision in *Windsor* for the proposition that " 'a bare ... desire to harm a politically unpopular group cannot' justify disparate treatment of that group." *Windsor*, 133 S.Ct. at 2693 (quoting *Dep't of Agric. v. Moreno*, 413 U.S. 528, 534, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973)).

As already discussed at length, Glossip's argument fails because the survivor benefits statute restricts benefits based on marital status, not sexual orientation. Further, the history of section 104.140 demonstrates that the spousal requirement was not enacted to harm gays and lesbians. Section 104.140 has limited survivor benefits to a deceased employee's surviv-

ing spouse since the first death benefit was enacted in 1969, predating Missouri's first statute limiting marriage to opposite-sex couples by over 25 years. *See Windsor*, 133 S.Ct. at 2689 (remarking that "[i]t seems fair to conclude that, until recent years, many citizens had not even considered the possibility that two persons of the same sex might aspire to … lawful marriage. For marriage between a man and a woman no doubt had been thought of by most people as essential to the very definition of that term and to its role and function throughout the history of civilization."). Instead, the spousal requirement is reasonably related to several government interests distinct from the public policy limiting marriage to opposite-sex couples.

## IV. The Survivor Benefits Statute Is Not a Special Law

▐ Glossip's amended petition also requests a declaration that the survivor benefits statute is an unconstitutional special law.[7] Article III, section 40 of the Missouri Constitution prohibits the legislature from enacting "special laws" when a general law can be made applicable. "Special laws" are "statutes that apply to localities *rather than* to the state as a whole and statutes that benefit *individuals* rather than the general public." *Jefferson Cnty. Fire Prot. Dists. Ass'n v. Blunt*, 205 S.W.3d 866, 868–71 (Mo. banc 2006). In other words, a special law "includes less than all who are similarly situated … but a law is not special if it applies to all of a given class alike and the classification is made on a reasonable basis." *Savannah R–III Sch. Dist. v. Pub. Sch. Ret. Sys. of Mo.*, 950 S.W.2d 854, 859 (Mo. banc 1997) (citation omitted).

When a law is based on open-ended characteristics, it is not facially special and is presumed to be constitutional. *Jefferson Cnty.*, 205 S.W.3d at 870. Classifications are open-ended if it is possible that the status of members of the class could change. *Harris v. Mo. Gaming Comm'n*, 869 S.W.2d 58, 65 (Mo. banc 1994). An open-ended law is not special as long as the classification is reasonable. *Jefferson Cnty.*, 205 S.W.3d at 870.

The survivor benefits statute is not facially special because the statute's spousal requirement creates an open-ended class: married couples. This class is open-ended because persons may move in and out of the class in that highway patrol employees may marry and divorce and their spouses may predecease them. *See Alderson*, 273 S.W.3d at 538 (finding an open-ended class where "employees come and go from the eligible class as they are hired and fired"). Glossip notes that Missouri prohibits same-sex marriage and, therefore, suggests that the category is close-ended. But, as previously discussed, Glossip has elected not to challenge the ban on same-sex marriage. Glossip and Engelhard never married in another state that recognizes same-sex marriage, nor did they attempt to challenge Missouri's ban on same-sex marriage. This claim is without merit.

Because the survivor benefits statute creates an open-ended class, the statute is presumptively constitutional and valid as long as the classification is reasonable. *Jefferson Cnty.*, 205 S.W.3d at 870. This Court has noted that "[t]he test for whether a statute with an open-ended classification is special legislation under article III, section 40 of the Missouri Constitution is similar to the rational basis test used in

---

7. Glossip also argues that section 104.012 is a special law. Glossip lacks standing to challenge section 104.012 for the reasons discussed in Part III.B, so this Court will not address this argument.

equal protection analysis." *Id.* For the reasons discussed above, the survivor benefits statute is reasonably related to legitimate state interests.

## V. Conclusion

The circuit court's judgment is affirmed.

RUSSELL, C.J., BRECKENRIDGE, FISCHER, STITH and WILSON, JJ., concur; TEITELMAN, J., dissents in separate opinion filed; DRAPER, J., concurs in opinion of TEITELMAN.

RICHARD B. TEITELMAN, Judge.

For decades, indeed centuries, gay men and lesbians have been subjected to persistent, unyielding discrimination, both socially and legally. That shameful history continues to this day. The statutes at issue in this case, sections 104.140.3, RSMo 2002, and 104.012, RSMo Supp. 2001, bear witness to that history and help ensure that this unfortunate past remains a prologue to the continued state-sanctioned marginalization of our fellow citizens. The plain meaning and intended application of sections 104.140.3 and 104.012 is to discriminate specifically against gay men and lesbians by categorically denying them crucial state benefits when their partner dies in the line of duty. This type of intentional, invidious and specifically targeted discrimination is fundamentally inconsistent with the constitutional guarantee of equal protection under the law.

Against this backdrop, the principal opinion holds that section 104.140.3 does not discriminate on the basis of sexual orientation because it draws a distinction only on the basis of marital status. This holding overlooks the fact that section 104.140.3 employs a definition of "spouse" that operates to the unique disadvantage of gay men and lesbians, even when, like Corporal Engelhard, they devote their lives to the defense of the same rule of law that relegates them to the status of second-class citizens. For these reasons, I respectfully dissent.

## I. Equal Protection

The United States Constitution provides: "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. Article I, section 2 of the Missouri Constitution similarly provides that "[A]ll persons are created equal and are entitled to equal rights and opportunity under the law." Missouri's equal protection clause provides the same protections as the United States Constitution. *State v. Young,* 362 S.W.3d 386, 396 (Mo. banc 2012). Although the textual guarantee of equal protection has been a consistent part of our law for more than 150 years, ensuring the practical realization of that guarantee is an ongoing process that has yielded demonstrably inconsistent results.

For nearly a hundred years following the Civil War, "separate but equal" and the attendant legally sanctioned racial segregation was held to satisfy the guarantee of equal protection. *See Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (holding that state sponsored "separate but equal" public schools violated the equal protection clause). Bans on interracial marriage were held to be consistent with equal protection during the lifetime of every member of this Court. *See Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010(1967) (holding that *Virginia's* ban on interracial marriage violated the equal protection clause). The guarantee of equal protection was not made conclusively applicable to women until 1971. *See Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) (holding that an Idaho statute

violated equal protection because it provided that "males must be preferred to females" when appointing the administrator of an estate). With the benefit of hindsight, the various decisions extending the guarantee of equal protection to racial minorities and women, though intensely controversial at the time, now seem obvious to a vast majority of Americans.

Now that *Brown, Loving* and *Reed* are woven firmly into the fabric of constitutional law, this question remains: Why did it take so long? One answer is that the same invidious discrimination that yielded separate but equal, bans on interracial marriage and outright legal discrimination against women informed the constitutional analysis of the day. Ultimately, however, the same pervasive discrimination that existed prior to *Brown, Loving* and *Reed* proved to be its own undoing because there was simply no way to square the textual guarantee of equal protection with continued and blatant discrimination that served no purpose other than to disadvantage a disfavored group.

Kelly Glossip's case raises the contemporary corrollary to this old issue. By overlooking the actual impact of sections 104.140.3 and 104.012, the principal opinion leaves Glossip and others similarly situated left to wonder when courts finally will square the textual guarantee of equal protection with the continued and blatant discrimination against gays and lesbians.

The question posed by Glossip's case is simply whether the equal protection clause prevents the state from extending survivor benefits only to married opposite-sex couples when state law makes any same sex-marriage a legal impossibility. To answer this question, this Court employs the following two-step analysis. In the first step, the challenged law is analyzed to determine the classification created by the law. Once the relevant classification is identified, the court must apply the appropriate level of scrutiny to determine whether there is a sufficient justification for the classification at issue.

## II. The Classification

Section 104.140.3 provides a survivor benefit to the "surviving spouse" of a highway patrol officer whose death arises out of and in the course of his or her duties. Section 104.140.3 does not define the term "spouse." The definition of "spouse" is clarified by section 104.012, which provides that "[f]or the purposes of public retirement systems administered pursuant to this chapter, any reference to the term 'spouse' only recognizes marriage between a man and a woman." Consequently, when sections 104.140.3 and 104.012 are read in conjunction, survivor benefits are available only for opposite-sex married couples but are a legal impossibility for all same-sex couples.

Despite the fact that the state has elected to provide survivor benefits on terms that make it legally impossible for any same sex-couple ever to receive survivor benefits, the principal opinion concludes that these statutes draw a distinction solely on the basis of marital status and in no way discriminate on the basis of sexual orientation. In one sense, the principal opinion is correct. The statutes do draw a distinction on the basis of marital status. This distinction, however, is drawn in a context in which same-sex couples are barred from marriage by the state constitution, a state statute provides that any same-sex marriage is a legal nullity, and section 104.012 defines a "spouse" as including only a marriage between a man and a woman. By tying the payment of survivor benefits to a definition of "spouse" that renders access to those benefits legally impossible to obtain only for gays and lesbians, the purported marital distinction

is also necessarily a distinction based on sexual orientation. *See Alaska Civil Liberties Union v. State*, 122 P.3d 781 (Ak. Sup.Ct.2005); *Diaz v. Brewer*, 656 F.3d 1008 (9th Cir.2011), and *Dragovich v. U.S. Dept. of the Treasury*, 848 F.Supp.2d 1091, 1100 (N.D.Cal.2012). Under these circumstances, there is no plausible way to conclude that sections 140.104.3 and 104.012 draw a distinction only on the basis of marital status and are somehow neutral on the issue of sexual orientation. Instead, it is clear that the statutes necessarily operate to the unique disadvantage of gays and lesbians precisely because of their sexual orientation. To conclude otherwise is akin to arguing that a statute that eliminates health benefits only for those who may have a child with sickle cell anemia is not discriminatory because it draws a distinction solely on the basis of a medical condition rather than on the basis of race.[1] At some point, equal protection analysis requires an assessment of the practical reality of the case. In this case, the reality is that Glossip's sexual orientation made it legally impossible for him to obtain survivor benefits. Sections 104.140.3 and

104.012 thereby turn the legal status of marriage into a proxy for discrimination on the basis of sexual orientation.[2]

The principal opinion asserts that the fact that Glossip disclaimed any challenge to the ban on same-sex marriage is fatal to his claim. That is incorrect. The fact that sections 104.140.3 and 104.012 draw a distinction on the basis of marriage and, by necessity, sexual orientation, does not mean that Glossip's case hinges on a challenge to the legal bar on same sex marriages. The crux of Glossip's argument is not based on any assertion that he should have had the legal right to marry Engelhard. As a matter of state constitutional law, that argument is foreclosed by article I, section 33 of the Missouri Constitution, which provides that "marriage shall exist only between a man and a woman." The plain language of article I, section 33 does nothing more than limit the state's recognition of marriage to opposite-sex couples. The fact that the state does not recognize same-sex marriages does not mean that gays and lesbians are deprived of their other fundamental individual constitutional rights. Nothing in the short, simple text

---

1. Sickle cell anemia is a disease that almost exclusively affects African–Americans. While the analogy is imperfect, it illustrates the key shortcoming with the principal opinion's analysis, which is that it does not account for the fact that the marital status distinction drawn by sections 104.140.3 and 104.012 necessarily operates to the unique disadvantage of gays and lesbians. This analogy is intended only to illustrate this point and is in no way intended to equate the distinct histories of African–Americans and gays and lesbians.

2. The principal opinion's analysis of the statutes is not only incorrect but it also is unnecessary. The principal opinion holds that Glossip lacks standing to challenge the statutory definition of "spouse" because he and Engelhard never were married. Section 104.012 provides the definition of the term "spouse" for purposes of paying survivor benefits pursuant to section 104.140.3. Instead

of simply incorporating the section 104.012 definition of "spouse" into section 104.140.3, the principal opinion constructs a two-part "threshold inquiry" analysis to support the conclusion that marital status is the only classification drawn and that there is no discrimination on the basis of sexual orientation. This construct allows the principal opinion to conclude that Glossip has no standing to challenge the definition of "spouse" and, therefore, avoid the fact that the section 104.012 definition of "spouse" that makes one eligible for benefits pursuant to section 104.140.3 blatantly discriminates on the basis of sexual orientation. Given the conclusion that Glossip's claim fails at the "threshold inquiry" because he and Engelhard never were married, the principal opinion simply should conclude that Glossip lacks standing to bring this case. The remainder of the principal opinion is unnecessary, non-binding dicta.

of article I, section 33 in any way overrides the separate constitutional guarantee of equal protection by justifying other forms of discrimination on the basis of sexual orientation.

Glossip's sole claim is that the benefits statutes violate equal protection because those statutes employ a definition of "spouse" that allows opposite-sex couples the opportunity to receive benefits while making it legally impossible for same-sex couples ever to receive benefits should one partner die in the line of duty.[3] The state can dispense benefits equally to gay and lesbian survivors without providing a legal status such as marriage. By choosing to dispense benefits only to those who are married, however, the state has elected to make the receipt of such benefits a legal impossibility for one and only one group of people. It is that group of people, gay and lesbian couples, who are specifically disadvantaged by sections 104.140.3 and 104.012 and who define the class subject to discriminatory treatment. The state constitutional ban on same-sex marriages is essentially irrelevant to Glossip's claim.

## III. Level of Scrutiny

Having determined that the statutes at issue necessarily discriminate on the basis of sexual orientation, the next analytical step requires an assessment of the state's justification for its discrimination. If a classification "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution," this Court must invalidate the challenged law if it is not necessary to accomplish some compelling state interest. *State v. Young*, 362 S.W.3d 386, 397 (Mo. banc 2012) (quoting *Etling v. Westport Heating & Cooling Services, Inc.*, 92 S.W.3d 771, 774 (Mo. banc 2003)). Suspect classifications subject to strict scrutiny include classifications based on race or national origin. If the classification does not operate to the disadvantage of a suspect class or impact a fundamental right, the law will stand so long as it is rationally related to a legitimate state interest.

The principal opinion correctly recites the standards for strict scrutiny and rational basis review but omits mention of the well-established equal protection jurisprudence holding that courts must apply heightened or "intermediate" scrutiny to a classification that disadvantages a group that has been subjected to historic patterns of disadvantage. Under intermediate or heightened scrutiny, the classification is permissible only if it is substantially related to the achievement of important governmental objectives. *See Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (applying intermediate scrutiny to a gender classification); *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465(1988) (applying interme-

---

**3.** The principal opinion asserts that this opinion "concedes" that the concern is not with the "spousal requirement as such" but rather the "legal context" that makes same-sex marriage a legal impossibility. This is incorrect. The concern is precisely with "spousal requirement as such" because, as established above, the undeniable practical effect of extending benefits only to a "spouse" is to completely preclude only gays and lesbians from ever obtaining survivor benefits. The principal opinion cites no authority for the proposition that legal context and the consequent practical reality is irrelevant to an equal protection claim. There is, however, ample authority supporting the proposition that reality matters. In *Alaska Civil Liberties Union v. State*, 122 P.3d at 781; *Diaz v. Brewer*, 656 F.3d at 1008, and *Dragovich v. U.S. Dept. of the Treasury*, 848 F.Supp.2d 1091 at 1100, the courts all held that statutes restricting benefits on the basis of marriage intentionally classify on the basis of sexual orientation when state law makes it impossible for a same-sex couple to marry.

diate scrutiny to a classification based on "illegitimacy").

More than a quarter century ago, this Court recognized that "[i]t cannot be doubted that historically homosexuals have been subjected to 'antipathy [and] prejudice.' " *State v. Walsh,* 713 S.W.2d 508, 511 (Mo. banc 1986). Although *Walsh* held that classifications based on sexual orientation were not subject to heightened equal protection scrutiny, that conclusion was based on the fact that homosexual behavior was, at that time, a crime. The rationale of *Walsh* is no longer viable in light of *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), which held that homosexual behavior is no longer subject to criminalization. What remains of *Walsh,* however, is this Court's accurate recognition of a historical pattern of state-sanctioned discrimination directed at gays and lesbians. The only defensible, reality-based conclusion to be drawn is that gay men and lesbians have been and, as this case illustrates, continue to be singled out for disparate treatment even though the immutable fact of whom one loves neither interferes with the rights of others nor has any relevance to one's ability to contribute to society. The legal import of this fact is that classifications aimed at disadvantaging people on the basis of their sexual orientation should be subjected to heightened scrutiny. *See Varnum v. Brien,* 763 N.W.2d 862 (Iowa 2009); *Kerrigan v. Comm'r of Pub. Health,* 289 Conn. 135, 957 A.2d 407 (2008); *In re Marriage Cases,* 43 Cal.4th 757, 76 Cal.Rptr.3d 683, 183 P.3d 384 (2008).

## IV. Sections 104.140.3 and 104.012 are not substantially related to the achievement of important governmental objectives

Sections 104.140.3 and 104.012 do not withstand heightened scrutiny. The state argues that the benefits statutes are justified by the state's interest in dispensing survivor benefits to those most likely to be economically dependent on the deceased trooper; ensuring that objective criteria dictate benefit eligibility; and that costs are controlled. None of these justifications are plausible.

The state's assertion that limiting survivor benefits to "spouses" will ensure that benefits are payable only to those who are most financially dependent on the deceased trooper is implausible. There is also no dispute that, at all times, Missouri law absolutely barred Glossip and Engelhard from becoming legally married. There is also no dispute in this case that Glossip and Engelhard were in a long-term, committed and financially interdependent relationship. Yet, under the guise of ensuring that benefits are paid only to those couples who are truly financially interdependent, the state denied Glossip any survivor benefit following Engelhard's death. As this case demonstrates, the relationship between marriage and financial interdependence fails to provide a rational basis, let alone a substantial justification, for categorically excluding same-sex couples from crucial benefits, particularly when, as in this case, the state effectively concedes that Glossip and Engelhard were, in fact, financially interdependent. Marriage simply cannot be a proxy for financial interdependence when only gays and lesbians—a relatively small, readily identifiable and historically marginalized group—are excluded categorically from being married legally.

The state also argues that it has an interest in ensuring that objective criteria dictate benefit eligibility. That is true. However, the state is not free to choose whatever "objective" criteria it wants. Objectivity is not synonymous with constitutional validity. National origin and sex

are objective criteria, yet no one would contend seriously that the objectivity of either classification conclusively would establish the constitutional validity of statutes based on those classifications. Yet the state asserts that the "objective" criterion of same-sex marriage is a valid proxy for commitment and financial interdependence. As noted above, for purposes of this case and others like it, same-sex marriage is not a valid proxy for financial interdependence. When the state's asserted interest is in ensuring that benefits are paid to a survivor who was in a committed, financially interdependent relationship with a deceased trooper, then the criteria that bear the most substantial relationship to the goal of objectivity would be none other than evidence of long-term commitment and financial interdependence.

Finally, the state asserts that excluding all same sex couples from benefits is justified on cost-control grounds. If "cost control" constitutes a substantial justification for the denial of benefits in cases subject to heightened scrutiny, discrimination always would be justified on purely economic grounds. In other words, discrimination is cheaper than equal protection. The state's interest in efficiency cannot justify the discriminatory treatment of one group of citizens in favor of another. *See Varnum v. Brien,* 763 N.W.2d at 896–897; *In re Balas,* 449 B.R. 567, 579 (Bankr. N.D.Cal.2011).

### V. Conclusion

The statutes at issue discriminate on the basis of sexual orientation. The discrimination is not substantially related to a legitimate state purpose. Consequently, I would reverse the judgment dismissing Glossip's claim for survivor benefits.