401 S.W.2d 385 (1966)
In re Condemnation COLEMAN HIGHLANDS, Kansas City, Missouri.
Sheridan E. KINDLE et al., Respondents,
v.
KANSAS CITY, Missouri, a Municipal Corporation, Appellant.
No. 51526.
Supreme Court of Missouri, Division No. 2.
April 11, 1966.
Don M. Jackson, Kansas City, Jackson, Wade & Barker, Kansas City, of counsel, for respondents.
Herbert C. Hoffman, City Counselor, Benj. M. Powers, Sp. Counsel, Kansas City, for appellant.
EAGER, Presiding Judge.
This proceeding is one in condemnation under the provisions of the Kansas City Charter. The proceeding was instituted by the filing of the condemnation ordinance in the Circuit Court on February 12, 1965. Service was made by publication and by certified mail addressed to the various interested property owners; no point is raised regarding the service. The tract involved consists of substantially all of Coleman Highlands, an addition in Kansas City extending, generally speaking, from 31st Street to 35th Street, north and south, and from Summit Street (Southwest Trafficway) to Holly Street, east and west. Its dimensions are approximately 2600 feet by 1300 feet. There are apparently 311 lots in the addition, and several streets run wholly or partially through it; one of these is Karnes Boulevard which runs generally north and south through the easterly portion, it being the next street west of Summit. Since no evidence was heard, we take our information from a map filed concurrently with the ordinance and made a part of our transcript.
The ordinance recites, in substance, the following: that the use of all lots in Coleman Highlands was originally restricted (obviously about 1903) to "detached residences" and suitable outbuildings, but that such provisions "were to expire" by their terms on June 1, 1923; that the City extended those provisions "by ordinance" for *386 an additional twenty years, and again did so by ordinance passed on May 10, 1943, it being further recited that the latter ordinance operated in "substantially the same manner as is provided in this ordinance"; that all buildings on the various streets in the addition were used exclusively for residential purposes and that "the overwhelming sentiment and belief of the property owners immediately interested, and of all citizens who desire to make Kansas City a good place in which to live, and of the Council are that the enactment and enforcement of this ordinance will enhance and stabilize the value and utility of each and every piece of property within the district herein described and will maintain property values for the purpose of public taxation and will promote the health and welfare of the city, as well as add to the beautification of the city and of said Coleman Highlands Addition, * * *." Following the foregoing, it was enacted that: for a period of twenty years from the effective date of the ordinance the lots, tracts and parcels of land in Coleman Highlands (except a group of 23 and a fraction lots at the northwest corner,with no explanation for the exception) should be restricted in use as therein provided, namely, that "no house or buildings, other than single detached residences, each for the use of one family only * * * shall be constructed or used * * *." Other provisions were included concerning the land area for each building constructed, billboards, gasoline tanks and filling stations; these are not immediately material to our discussion. The ordinance further provided that since the owners might "claim" that their properties had been taken or damaged for public use, all rights of the owners to use any of such property contrary to the provisions of the ordinance were thereby "taken and condemned for public use"; it further provided that compensation should be assessed and paid in accordance with the Charter, by special assessment to be levied upon a benefit district with boundaries precisely the same as those of the tract under condemnation. It was further provided that the ordinance should be effective notwithstanding any provision of the Kansas City general zoning ordinance, and that it might be repealed within said period of twenty years only "upon the petition of a majority of the owners" of property within the benefit district, both in number and in front footage.
On March 15, 1965, ten lot owners in the addition filed a petition for declaratory judgment seeking a declaration that the ordinance was unconstitutional and void, generally upon the theory that the taking was for private use and benefit, that it was ultra vires, and that it constituted a taking of their property rights without due process. For reasons to be developed, we shall not need to elaborate further on that petition.
Five motions to dismiss the condemnation proceedings were filed by property owners in the district, representing sundry pieces of property. These motions alleged generally: that the ordinance was violative of Article 1, §§ 26 and 28 of the Missouri Constitution, V.A.M.S., in that it directed the taking of private property and rights for private use, under the pretext of taking it for public use; that it was ultra vires, and contrary to the provisions of the charter; that it was enacted predominantly for the private benefit of those owners of property in the district who desired to maintain one-family occupancy; that the enforcement of the ordinance against properties fronting on the Southwest Trafficway would not serve any of the purposes recited; that any possible public benefit would be merely incidental; that the ordinance deprived the owners of property rights without due process, and that it was not authorized under the condemnation provisions of the Kansas City Charter.
The court consolidated the condemnation proceedings with the declaratory judgment suit and on April 22, 1965 (order re-entered in more specific form on May 11, 1965) sustained all of the motions to dismiss, and dismissed the consolidated causes with prejudice, without the hearing of any evidence. *387 In due time the City appealed. The obvious question is whether such a condemnation proceeding was and is legally permissible. We shall refer to the condemnor as the City.
Kansas City is given the following general power of condemnation by Article 1, § 1(9) of its Charter: "To exercise the right of eminent domain and to condemn property, real or personal, or any right, interest, easement, restriction or use therein, within or without the city or state for any public or municipal use or purpose." As already stated, no evidence was heard, and no stipulation of facts was filed. In the briefs both parties indulge in rather elaborate factual statements, but we may not and do not consider these as established or stipulated facts. We do know that Kansas City has a general zoning ordinance, for it is pleaded. The City has chosen the present route, with a proposed compensation to property owners, rather than an attempted amendment of its zoning law which would necessarily recognize existing uses to the extent provided, and require compliance with a fixed procedure. We are not told, except informally, the present zoning of this property, but we may reasonably assume that it is not zoned for single family dwellings, or else there would be no necessity for the present condemnation proceedings; and we may further reasonably assume that there are now some existing structures and uses in the district which do not consist of single family detached residences.
The position of the City is, briefly: that it has the discretion and the option to use its power of eminent domain rather than its police power to restrict the use of private property; that the condemnation here is for a public purpose; and that it is not violative of any constitutional or charter provisions. The property owners say, as already indicated: that the ordinance would, in fact, take their property rights for the benefit of those private owners in the district who desire the restriction; that there is no bona fide public purpose, and that any possible public benefit would be purely incidental; that, as such, the proceeding violates both the federal and state constitutions in specified respects, and that it is beyond the charter powers of the City.
If we decide this appeal on the merits we must determine whether, on this record, the purpose and use are or are not public, or, in the alternative, that the ordinance on its face is violative of due process or is ultra vires. There is no fixed or stereotyped definition of the term "public use." Under Article 1, §§ 26 and 28, Missouri Constitution, private property may not be taken for private use, and it may only be taken for public use with "just compensation"; and whether the use is a public one shall be "judicially determined without regard to any legislative declaration that the use is public." A legislative determination may be conclusive upon a question of expediency or necessity. State ex rel. State Highway Commission v. Curtis, 359 Mo. 402, 222 S.W.2d 64; State ex rel. State Highway Commission v. Shultz, 241 Mo. App. 570, 243 S.W.2d 808; City of Caruthersville v. Ferguson, Mo., 226 S.W. 912.
Where the public use or purpose is questioned in a condemnation case the Missouri courts have, with substantial unanimity, heard evidence on the question, unless a stipulation of facts has been filed or the facts are matters of common knowledge. Thus, see: In the Matter of Proceedings to Grade North Elmwood Avenue, Mo., 270 S.W.2d 863; Kansas City v. Liebi, Banc, 1923, 298 Mo. 569, 252 S.W. 404, 28 A.L.R. 295 (relied on strongly by appellant); Bowman v. Kansas City, Mo., 233 S.W.2d 26; Woodmansee v. Kansas City, 346 Mo. 919, 144 S.W.2d 137; City of Kirkwood v. Venable, 351 Mo. 460, 173 S.W.2d 8; these illustrations are in addition to sundry cases from other states cited by respondents, in all or substantially all of which evidence appears to have been heard. In Bowman, supra, the court said at 233 S.W.2d loc. cit. 30: "Where the exercise of the power of eminent domain is proposed, a properly interested party such as a *388 taxpayer, has a right to demand that the court hear evidence to determine whether the taking is for a public or a private use." We add here, parenthetically, that respondents had no need to "demand" the hearing of evidence, for their motions were sustained without it. Also, the factual situation may have a very material bearing on the issue raised by the assertion that property rights are being taken without due process. Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833.
Under these circumstances, the merits of the respective contentions can more properly be determined after the trial court has heard evidence; this it may do, in its discretion, prior to any hearing in the actual condemnation upon a reconsideration of the motions to dismiss; or, in the alternative, it may prefer to hear the declaratory judgment suit. Among other evidentiary facts, we suggest that the evidence should develop the following: the type and nature of all existing structures and uses in the district covered by the proceedings, as well as those in the immediately surrounding areas; the explanation (if such can be arrived at by admissible evidence or stipulation) for excepting a number of lots at the northwest corner of the addition; the past and present zoning of the addition; whether efforts have ever been made to rezone it, or any portions of it; the comparative character of the different parts of the addition; what changes, including construction, demolition and reconstruction, would be required on existing structures in order to conform fully to the present ordinance; the traffic conditions both in and along the edges of the district; the locations of the lot lines and buildings along Southwest Trafficway (Summit Street); and whether or not the present proceedings were instituted upon petition (or request) of property owners in the district. These and kindred matters should be considered as bearing upon the nature of the proposed use, and also upon the possible issue of substantive due process, namely, whether the action might (as to the particular properties involved) be considered as arbitrary and unreasonable because having no substantial relationship to the "public health, safety, morals, or general welfare." Huttig v. City of Richmond Heights, Mo., 372 S.W.2d 833. In this we do not consider as material the fact asserted by the City that the condemnation procedure prescribed by Kansas City's Charter may have been held sufficient in answer to objections that it does not afford procedural due process. We also note here for the consideration of the trial court on remand, the provision of the ordinance that it may only be repealed within a twenty-year period upon petition of a majority of the property owners in the district, in number and frontage. While it does not immediately appear how the hearing of evidence may in any way amplify this, we note it because upon a further hearing the court may well make, if requested or of its own motion, findings of fact and conclusions of law.
It is entirely unnecessary, in this state of the case, to discuss any of the authorities cited on the merits, except for a passing reference. The City cites and largely relies upon the case of Kansas City v. Liebi, Banc, 1923, 298 Mo. 569, 252 S.W. 404, 28 A.L.R. 295. We do note that there the court adopted what it described as a liberal and flexible interpretation of "public use" which, it said, was synonymous with "public advantage" or "public benefit," and did not require that there should be an actual use or occupation of the land by the public or a public agency. It further stated, at loc. cit. 408, that: "In order to constitute public use, it is not necessary that the whole community or any large part of it should actually use or be benefited by a contemplated improvement. Benefit to any considerable number is sufficient." That case has been cited several times on these statements of general principles, and as recently as in Arata v. Monsanto Chemical Co., Mo., 351 S.W.2d 717, but none of those cases involved such a situation as we have here. They held to be public purposes such uses as highway improvements, slum clearance and redevelopment, public parks, a municipal *389 parking garage, etc. There were and are certain factual differences between the situation in the Liebi case and that in the present one which may or may not be material. The Liebi case is the only Missouri case cited by the City in which (in effect) a zoning result was accomplished in a condemnation case, without an actual physical taking of land. We note also that it has been said that if the public purpose is primary and paramount it will not be defeated by the fact that a private use or benefit will result incidentally; but, if the chief dominating purpose or use is private, the mere fact that a public use or benefit is also incidentally derived will not warrant the exercise of the power of eminent domain. 18 Am.Jur., Eminent Domain, §§ 41, 42; 53 A.L.R. Annotation 9, 24.
The judgment in the consolidated causes is reversed and the causes are remanded for further proceedings as indicated in this opinion.
All of the Judges concur.