

# SUPREME COURT OF MISSOURI
## en banc

LINDA LABRAYERE AS TRUSTEE )
OF THE DON E. LABRAYERE TRUST, )
ET AL., )
       )
            Appellants, )
       )
vs. )      No. SC93816
       )
BOHR FARMS, LLC, ET AL., )
       )
            Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY
The Honorable Jodie Asel, Judge

*Opinion issued April 14, 2015*

Several landowners and other individuals (Appellants) filed suit against Cargill Pork LLC and Bohr Farms (Respondents) alleging damages for temporary nuisance, negligence, and conspiracy due to alleged offensive odors emanating from a concentrated animal feeding operation (CAFO) owned and operated by Bohr Farms. Appellants alleged that their damages for temporary nuisance consisted solely of the loss of use and enjoyment of their property. Appellants admitted that they were not claiming damages for diminution of rental value or documented medical conditions as authorized by section 537.296.2(2) and section

537.296.2(3).[1] Appellants also asserted that Bohr Farms was negligent, that Cargill was vicariously liable for the nuisance and negligence, and that Bohr Farms and Cargill engaged in a civil conspiracy.

The circuit court entered summary judgment for Respondents. The court determined that section 537.296 was constitutional and that the statute did not authorize an award of damages for Appellants' alleged loss of use and enjoyment of their property. The court also denied recovery on Appellants' negligence and civil conspiracy claims. This appeal follows.

Appellants argue that section 537.296 is unconstitutional because the statute: (1) violates article I, section 28 of the Missouri Constitution by authorizing a private taking; (2) violates article I, section 26 of the Missouri Constitution by authorizing a taking for public use without just compensation; (3) violates the equal protection clause of the state and federal constitutions; (4) denies substantive due process and violates article I, section 2 of the Missouri Constitution; (5) violates the separation of powers required by article II, section I of the Missouri Constitution by statutorily defining "standing;" (6) violates the open courts provision of article I, section 14 of the Missouri Constitution; and (7) violates the prohibition against special laws set forth in article III, section 40 of the Missouri Constitution. Appellants also assert that the trial court erred in granting summary judgment on their claims for negligence and conspiracy because there was a

---

[1] All statutory references are to RSMo 2000, as updated by RSMo Supp. 2011, unless otherwise indicated.

genuine issue of material fact regarding the level of control that Cargill exerted over Bohr.

The judgment is affirmed.[2]

## I. Background

Section 537.296 went into effect on August 28, 2011.  The statute supplants the common law of private nuisance in actions in which the "alleged nuisance emanates from property primarily used for crop or animal production purposes."  Unlike a common law private nuisance action, section 537.296 precludes recovery of non-economic damages for items such as loss of use and enjoyment, inconvenience, or discomfort caused by the nuisance.[3]  Instead, the statute only authorizes the recovery of economic damages in the form of diminution in the market value of the affected property as well as documented medical costs caused by the nuisance.

In September 2011, just days after section 537.296 became effective, Bohr Farms began operating a CAFO that can accommodate more than 4,000 hogs.

---

[2] This Court has jurisdiction over the appeal because Appellants challenge the validity of section 537.296.  MO. CONST. art. V, sec. 3.

[3] At common law, an action for temporary nuisance damages allowed recovery of both economic and non-economic damages.  *McCracken v. Swift & Co.,* 265 S.W. 91, 92 (Mo. 1924).   Economic damages included decrease in rental value while the nuisance existed as well as medical costs caused by the nuisance. *Id.*; *see also Frank v. Envtl. Sanitation Mgmt.*, 687 S.W.2d 876, 883 (Mo. banc 1985) (temporary nuisance damages include loss of rental value).  Non-economic damages included items such as inconvenience, discomfort and loss of quality of life. *McCracken,* 265 S.W. at 92; *see also Brown v. Cedar Creek Rod & Gun Club*, 298 S.W.3d 14, 21 (Mo. App. 2009) (overruled on other grounds by *Badaham v. Catering St. Louis*, 395 S.W.3d 29 (Mo. banc 2013).

Bohr Farms owns and operates the CAFO. Cargill owns the hogs, and Bohr raises them. The CAFO includes an on-site sewage disposal system as well as a system for composting deceased hogs.

Appellants own or possess property in Callaway and Montgomery counties. The properties are located near the CAFO. Appellants filed suit against Cargill and Bohr alleging that the CAFO causes offensive odors, particulates, pathogens, hazardous substances, flies, and manure to "escape" onto their property. Appellants alleged that the offensive emissions constitute a temporary nuisance that substantially impairs the "use and quiet enjoyment" of their property. Appellants did not claim damages for diminution in rental value or documented medical costs as authorized by section 537.296.2(2).

Respondents filed a motion for summary judgment asserting that section 537.296.2(2) foreclosed Appellants' claim for use and enjoyment damages. Respondents also asserted that Appellants' claim for damages for negligence and conspiracy was barred by section 537.296.6(1), which provides that damages for "annoyance, discomfort, sickness, or emotional distress" are recoverable "provided that such damages are awarded on the basis of other causes of action independent of a claim of nuisance." Respondents asserted that negligence and conspiracy claims are not "independent of a claim of nuisance" because they are based on the alleged nuisance.

In response, Appellants asserted that section 537.296 violated several constitutional provisions and that there were insufficient facts to warrant summary

4

judgment on the conspiracy and negligence claims. The trial court entered summary judgment in favor of Respondents.

## II. Standard of Review

A summary judgment will be affirmed on appeal when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). Appellants' argument that section 537.296 is unconstitutional raises legal issues subject to de novo review. *See State v. Honeycutt*, 421 S.W.3d 410, 414 (Mo. banc 2013). "Statutes are presumed constitutional and will be found unconstitutional only if they clearly contravene a constitutional provision." *Id.* "The person challenging the validity of the statute has the burden of proving the act clearly and undoubtedly violates the constitutional limitations." *Id.*

## III. Constitutional Arguments

1. <u>Section 537.296 does not authorize an unconstitutional private taking</u>

Appellants argue that section 537.296.2 authorizes an unconstitutional private taking. Appellants argue that the statute effectuates a taking because limiting temporary nuisance damages to diminution of rental value requires Appellants to forfeit their right to the use and enjoyment of their properties for Respondents' private benefit. Appellants assert that the taking is private because the statute "effectively provide[s] the right of eminent domain to private

5

companies" in that the activity causing the alleged taking is a private farming operation rather than a public use or benefit.

Article I, section 28 of the Missouri Constitution provides "[t]hat private property shall not be taken for private use with or without compensation, unless by consent of the owner ...." [4]    To demonstrate that section 537.296 authorizes an unconstitutional private taking, the text of article I, section 28 requires Appellants to identify: (1) "property" (2) that was "taken" (3) for "private use" (4) without Appellants' consent.  Assuming for the sake of argument that the statutory limitations on nuisance damages constitute a taking of private property, Appellants' private takings claim fails because they cannot overcome the presumption of constitutional validity by clearly establishing that the alleged taking is for private use. [5]

The distinction between a public use and a private use is not based on actual use or occupation of the property by the public.  *State ex rel. Jackson, et al. v. Dolan,* 398 S.W.3d 472, 476 (Mo. banc 2013).  The fact that private parties benefit from a taking does not eliminate the public character of the taking so long as there is some benefit to "any considerable number" of the public.  *Id.,* quoting *In re Kansas City Ordinance No. 39946*, 252 S.W. 404, 408 (Mo. banc 1923).  A

_____

[4] Article I, section 28 provides exceptions to the general prohibition against private takings by allowing for "private ways of necessity" and "drains and ditches across the lands of others for agricultural and sanitary purposes."

[5] Article I, section 28 provides:  "when an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be judicially determined without regard to any legislative declaration that the use is public."

use is public if it is reasonably likely to create some "public advantage" or "public benefit." *Dolan*, 398 S.W.3d at 476 (citing *In re Coleman Highlands*, 401 S.W.2d 385, 388 (Mo. 1966)).

There are two deficiencies in Appellants' argument that section 537.296.2 effectuates a private taking. First, the plain language of section 537.296.2 does not delegate any authority to private parties or authorize any landowner to create a nuisance. To the contrary, the statute provides that a nuisance is unlawful and authorizes the party suffering a nuisance to recover damages.

Second, this Court has previously noted that regulations enacted to promote economic development generally have a valid public purpose sufficient to satisfy the public use requirement. *Dolan*, 398 S.W.3d at 478. More specifically, this Court has held that promoting the agricultural economy is a legitimate public purpose. *State ex rel. Webster v. Lehndorff Geneva, Inc.,* 744 S.W.2d 801, 806 (Mo. banc 1988) (a statute requiring foreign corporations to sell farmland serves the legitimate public purpose of promoting the agricultural economy by reducing concentrated property ownership). Section 537.296 is plainly aimed at promoting the agricultural economy to create a public advantage or benefit. The fact that some parties will receive direct benefits and others will sustain direct costs does not negate the public purposes advanced by section 537.296. *Dolan*, 398 S.W.3d at 476; *see also Phillips Pipe Line Co. v. Brandstetter*, 263 S.W.2d 880, 886 (Mo. App. 1954) (condemnation of property for a privately operated oil pipeline satisfied the public use requirement because of the resulting public benefits). To

the extent, if any, that section 537.296 effectuates a taking, the taking advances a legitimate public purpose and, therefore, meets the "public use" requirement. Appellants have not overcome the presumption of constitutional validity by clearly establishing that section 537.296.2 constitutes a private taking.

2. Section 537.296 does not authorize a taking for public use without just compensation

Appellants argue that section 537.296.3 authorizes an unconstitutional taking for a public use without just compensation because the statute requires that all nuisance claims subsequent to the initial temporary nuisance claim will be "considered a permanent nuisance." By requiring that all subsequent nuisance claims are claims for permanent nuisance, Appellants assert that the statute effectively amounts to the grant of an easement allowing Respondents to permanently interfere with Appellants' full use and enjoyment of their properties. Appellants also assert that section 537.296.2(2) effectuates a regulatory taking by limiting temporary nuisance damages to diminution of rental value and barring recovery of specific damages for the loss of use and enjoyment of their properties.[6] Article I, section 26 of the Missouri Constitution provides: "private

---

[6] A regulatory taking occurs when a government regulation does not result in a physical invasion of property or the denial of all economically viable use but, instead, "goes too far" in restricting the exercise of property rights. The Supreme Court of the United States has set out three factors to consider whether the regulation has gone "too far:" (1) "the economic impact of the regulation on the claimant;" (2) "the extent to which the regulation has interfered with distinct investment-backed expectations;" and (3) "the character of the governmental action," particularly "whether it amounts to a physical invasion" or appropriation of property or instead merely affects property interests through "some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978).

property shall not be taken or damaged for public use without just compensation." Unlike article I, section 28, which categorically bars the state from taking property for private uses, article I, section 26 authorizes the state to take private property for a public use provided just compensation is paid. *See Dolan*, 398 S.W.3d at 476; *State ex rel. Doniphan Tel. Co. v. Public Serv. Comm'n*, 369 S.W.2d 572, 575 (Mo. 1963) (the constitution contemplates a lawful taking of private property for public use).

"Property is defined as including not only ownership and possession but also the right of use and enjoyment for lawful purposes." *Hoffmann v. Kinealy*, 389 S.W.2d 745, 752 (Mo. banc 1965). The state constitutional provisions barring the taking of private property apply "equally to the enjoyment and the possession of lands." *Id.* at 753. Consequently, "[a]n arbitrary interference by the government, or by its authority, with the reasonable enjoyment of private lands is a taking of private property without due process of law, which is inhibited by the Constitution." *Id.*

Appellants' argument that section 537.296.3 effectively creates an easement is not ripe for consideration. Ripeness is determined by whether "the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing, and to grant specific relief of a conclusive character." *Schweich v. Nixon*, 408 S.W.3d 769, 774 (Mo. banc 2013). While "[t]here can be a ripe controversy before a

9

statute is enforced," there must be "an immediate, concrete dispute" to render the case ripe for resolution by this Court. *See Planned Parenthood of Kansas v. Nixon*, 220 S.W.3d 732, 738-769 (Mo. banc 2007).

Section 537.296.3 applies only to "any subsequent claim against the same defendant or defendant's successors for temporary nuisance related to a similar activity or use of the defendant's property ...." Appellants are seeking damages only for a temporary nuisance. Section 537.296.3 does not apply to this case. There is no immediate, concrete dispute between the parties regarding the permanent nuisance provision of section 537.296.3. Appellants' easement argument is not ripe.

Appellants also assert that section 537.296.2(2) effectuates a regulatory taking because the statute denies compensation for their constitutionally protected right to the use and enjoyment of their property.[7] Assuming for the sake of argument only that the statute effectuates a regulatory taking, Appellants'

---

[7] Appellants' argument that section 537.296 effectuates a taking by sanctioning the maintenance of a private nuisance is not inconsistent with Missouri law. As noted, a taking can occur when there is an arbitrary interference by the government, or by its authority, with the reasonable enjoyment of private lands .... *Hoffman*, 389 S.W.2d at 753. Subsequently, this Court tacitly recognized that a taking by inverse condemnation can result when the government maintains a sewer facility that emits odors sufficient to constitute a nuisance. *Byrom v. Little Blue Valley Sewer District, et al.*, 16 S.W.3d 573, 577-578 (Mo. banc 2000). It is, therefore, conceivable that a statute limiting recovery of nuisance damages could sufficiently diminish a landowner's right to recover damages for an unreasonable interference with the use and enjoyment of his or her property could amount to a regulatory taking without just compensation. As established, however, the temporary nuisance cause of action defined in section 537.296.2(2) does not authorize a nuisance and provides for damages consistent with constitutionally required just compensation.

10

constitutional challenge fails because diminution of rental value is the benchmark for awarding just compensation for a temporary taking.

"Just compensation" is the amount of the fair market value of the property taken. *St. Louis Cnty. v. River Bend Estates Homeowners' Ass'n,* 408 S.W.3d 116, 137 (Mo. banc 2013). The requirement of just compensation is a minimum measure that must be paid, not a maximum one. *Id.* "Under this standard, the owner is entitled to receive 'what a willing buyer would pay in cash to a willing seller' at the time of the taking." *Kirby Forest Indus., Inc. v. United States,* 467 U.S. 1, 10, 104 S.Ct. 2187 (1984).

To determine the fair market value of the property taken, courts must identify the nature of the taking. Appellants allege a taking caused by a temporary nuisance. The alleged taking is, therefore, a temporary taking.[8] When there is a temporary taking, just compensation requires payment of the "diminution in value of the use of occupancy" of the property for period in which the property was

---

[8] The distinction between a temporary and permanent taking is not strictly based on temporal considerations and is, instead, based primarily on the nature of the intrusion. *Petro-Hunt, L.L.C. v. United States,* 90 Fed.Cl. 51, 64 (Fed. Cl. 2009) (quoting *Bass Enterprises Prod. Co. v. United States,* 133 F.3d 893, 896 (Fed. Cir. 1998)). The nature of the intrusion is paramount because temporary takings that deny a landowner all use of his or her property are like permanent takings because in both instances the property owner is deprived of his or her property rights. *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.,* 482 U.S. 304, 318 (1987). For this reason, the Supreme Court in *First English* held that a zoning ordinance was a temporary taking because the ordinance did not deprive the owner of all property rights and, instead, amounted to a restriction on use that was subject to expiration if the ordinance was declared unconstitutional or repealed. *Id.* Appellants' takings theory is predicated on a statutory temporary nuisance claim that is based on non-permanent interference with the use and enjoyment of property. Appellants' claim is for a temporary taking.

11

taken or damaged.  *Byrom v. Little Blue Valley Sewer District, et al.*, 16 S.W.3d 573, 577 (Mo. banc 2000).  The loss of "use of occupancy" is generally measured as the rental value of the property for the period of the taking.  *Id*.; *see also Kimball Laundry Co. v. United States,* 338 U.S. 1, 7 (1949) (just compensation for a temporary taking "is the rental that probably could have been obtained" and not "the difference between the market value of the fee on the date of taking and that on the date of return.").  Damages for loss of use during the temporary taking can be factored into the fair rental value of the property.  *Byrom*, 16 S.W.3d at 578.

By authorizing a plaintiff to recover the diminution in rental value in a temporary nuisance, section 537.296.2(2) provides for the constitutionally required just compensation in the event that the alleged temporary nuisance amounts to a temporary taking of private property.  Therefore, Appellants have not met their burden of demonstrating that section 537.296.2(2) constitutes a taking for public use without just compensation.[9]

3. Section 537.296.2 does not deny equal protection

Appellants argue that section 537.296.2(2) denies equal protection because the statute does not survive strict scrutiny in that the damage limitations are not

---

[9] Appellants also assert that section 537.296.5 is unconstitutional because the statute does not allow compensation for a person who "rightfully occupies" property.  Section 537.296.5 provides that persons with an "ownership interest," which includes those with a "leasehold interest," have standing to file a nuisance action under the statute.  The plain language of section 537.296.5 refutes Appellants' assertion that a renter would have no standing to sue.  An occupant who lacks an ownership interest has no property right to take.  Barring an occupant from asserting a nuisance action is not an unconstitutional taking.

necessary to advance a compelling state interest. Appellants assert that strict scrutiny is required because the statute creates a suspect classification of rural landowners and residents and infringes on their fundamental property rights.

There are two steps to an equal protection analysis. *Amick v. Director of Revenue*, 428 S.W.3d 638, 640 (Mo. banc 2014). The first step requires a court to identify the classification at issue to ascertain the appropriate level of scrutiny. *Id.* If the challenged law draws a distinction on the basis of a suspect classification or curtails the exercise of a fundamental right, then strict scrutiny applies. *Id.* If there is no suspect classification or fundamental right at issue, a court will apply rational-basis review to determine whether the challenged law is rationally related to some legitimate end. *Id.*[10]

A. Suspect classification

Appellants assert that rural landowners and residents have been "effectively marginalized as a suspect class" because they lack the political influence and attendant power of urban residents to "push the nuisance away from their boundaries through the representative process." Even assuming that section 537.296 creates a classification based on residency, Appellants have not cited a single case that holds or even hints that rural landowners and residents are a suspect class.

---

[10] Gender-based classifications are subject to intermediate scrutiny. *Comm. for Educ. Equality v. State*, 294 S.W.3d 477, 496, n. 4 (Mo. banc 2009).

"Suspect classes are classes such as race, national origin, or illegitimacy that 'command extraordinary protection from the majoritarian political process' for historical reasons." *State v. Young*, 362 S.W.3d 386, 397 (Mo. banc 2012) (quoting *Etling v. Westport Heating & Cooling Services, Inc.*, 92 S.W.3d 771, 774 (Mo. banc 2003)). Appellants do not argue that rural landowners, the very people who played a central role in founding and forging this country, are a historically marginalized class in need of protection from the majoritarian political process. Further, Appellants overlook the fact that section 537.296 provides obvious benefits to the large number of rural landowners who devote their property primarily to agriculture. There is no basis for concluding that section 537.296 creates a suspect classification requiring strict scrutiny.

B. Fundamental rights

Appellants also argue that section 537.296 is subject to strict scrutiny because the statute "impinges on fundamental rights" to property. The fundamental rights requiring strict scrutiny are the rights to interstate travel, to vote, free speech, and other rights explicitly or implicitly guaranteed by the constitution. *In re Marriage of Woodson*, 92 S.W.3d 780, 784 (Mo. banc 2003). Appellants cite no cases holding that a statute that regulates private property is subject to strict scrutiny.

There is no doubt that individuals have a fundamental constitutional right to use and enjoy property free from arbitrary governmental interference. *See* MO. CONST. art. I, sec. 26 (private property shall not be taken for public use without

14

just compensation); *Hoffman*, 389 S.W.2d at 753.  If, as Appellants argue, a statute that restricts property rights is subject to strict scrutiny, then the state would have to justify all property regulations and its exercise of eminent domain on grounds that the action was necessary to achieve a compelling state interest.  Land use regulations are not subject to heightened judicial scrutiny under the equal protection clause.  *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440 (1985) (applying rational basis review in an equal protection challenge to a zoning ordinance); *see also Wrigley Properties, Inc. v. City of Ladue*, 369 S.W.2d 397, 400 (Mo. 1963) (zoning ordinance substantially restricting land use is constitutional if the reasonableness of the restrictions are fairly debatable).  Further, adopting Appellants' strict scrutiny argument would conflict with long-established takings jurisprudence providing that the state can directly confiscate private property for public use as long as the taking is shown to "substantially advance[s] a legitimate state interest."  *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834 (1987).  Section 537.296 is not subject to strict scrutiny.  The statute is subject to rational basis review.

C. Section 537.296 is rationally related to a legitimate state purpose

When applying rational-basis review, this Court presumes that a statute has a rational basis, and the party challenging the statute must overcome this presumption by a "clear showing of arbitrariness and irrationality."  *Amick*, 428 S.W.3d at 640, quoting *Foster v. St. Louis Cnty.*, 239 S.W.3d 599, 602 (Mo. banc 2007).  The issue is not whether the reviewing court perceives the challenged law

as wise or desirable. The issue is whether the challenger has demonstrated that the law is completely irrational. *Id.*

"It is within the province of the legislature to enact a statute which regulates the balance of competitive economic forces in the field of agricultural production and commerce, thereby protecting the welfare of its citizens comprising the traditional farming community, and such statute is rationally related to a legitimate state interest." *Lehndorff Geneva, Inc.,* 744 S.W.2d 801 at 806; *see also Linton v. Missouri Veterinary Med. Bd.*, 988 S.W.2d 513, 516 (Mo. banc 1999) (licensing requirements for veterinarians advance the legitimate state interest in "a sound agricultural economy"). Irrespective of the perceived desirability of section 537.296, the statute rationally advances the legitimate state interest in promoting the agricultural economy by reducing the litigation risk faced by Missouri farmers while permitting nearby landowners to recover the diminution in property value caused by agricultural operations. Appellants have not established that section 537.296 is completely irrational and unrelated to advancing a legitimate state interest.

4. Section 537.296.2 does not violate due process

Appellants argue that section 537.296 violates article I, section 2 of the Missouri Constitution and the "substantive due process standards inherent therein" because the statutory damage limits destroy the guarantee of the right to the enjoyment of one's own industry. Appellants' argument is premised on the proposition that the statute deprives them of fundamental property rights and is

16

unrelated to a legitimate state interest. The same reasons that foreclosed Appellants' equal protection arguments also foreclose Appellants' arguments that the statute denies substantive due process and violates the constitutional right to the gains of one's own industry.

5. Separation of powers

Appellants assert that section 537.296.5 unconstitutionally delegates the standing determination to the legislature by providing that no person shall have standing unless he or she has an "ownership interest" in the affected property. Appellants assert that standing is a judicial doctrine that is not subject to legislative definition.

Appellants do not assert that the claims of any litigants in this case were dismissed for lack of standing due to the lack of an "ownership interest" as required by section 537.296.5. Appellants' separation of powers argument is premised on a theoretical possibility rather than the record of undisputed facts in this case. This Court will not declare a statute unconstitutional absent an actual or threatened application of the statute to a party challenging the statute. *See State v. Richard*, 298 S.W.3d 529, 533 (Mo. banc 2009) (party challenging the constitutional validity of a statute prohibiting possession of a loaded firearm while intoxicated had "no standing to raise hypothetical instances" in which it might be applied unconstitutionally). Consequently, Appellants do not have standing to challenge the validity of section 537.296.5 because they have not demonstrated the requisite "personal stake arising from a threatened or actual injury" from

17

application of the statute.  *Schweich v. Nixon*, 408 S.W.3d  774 (Mo. banc 2013)

(quoting *State ex rel. Williams v. Mauer*, 722 S.W.2d 296, 298 (Mo. banc 1986).

6. Appellants have not demonstrated that section 537.296.2 violates the open
    courts clause

Appellants argue that section 537.296 violates the open courts provision of

article I, section 14 of the Missouri Constitution because the statute "denies access

to the courts to lawful possessors and occupiers of land."  The open courts

provision of the Missouri Constitution guarantees "the right to pursue in the courts

the causes of action the substantive law recognizes."  *Harrell v. Total Health

Care, Inc.,* 781 S.W.2d 58, 62 (Mo. banc 1989).   Appellants do not argue that

section 537.296 restricts access to the courts to pursue a recognized cause of

action.   Therefore, Appellants' arguments do not implicate the interests protected

by article I, section 14, and Appellants have not demonstrated that section 537.296

violates article I, section 14.

7. Section 537.296.2 is not an unconstitutional special law

Appellants assert that section 537.296 is an unconstitutional "special law"

in violation of article III, section 40 of the Missouri Constitution.  Appellants

argue that section 537.296 "benefits only the corporate farming industry" by

specifically limiting temporary nuisance damages "where the alleged nuisance

emanates from property primarily used for crop or animal production purposes."

Section 537.296.2.  This argument is without merit.

Article III, section 40 prohibits the legislature from enacting "special laws" when a general law can be made applicable. Special laws are "statutes that apply to localities rather than to the state as a whole and statutes that benefit individuals rather than the general public." *Glossip v. Missouri Dep't of Transp. and Highway Patrol Employees' Ret. Sys.*, 411 S.W.3d 796, 808 (Mo. banc 2013) (citing *Jefferson Cnty. Fire Prot. Districts Ass'n v. Blunt*, 205 S.W.3d 866, 868-71 (Mo. banc 2006)). In other words, a special law "includes less than all who are similarly situated ... but a law is not special if it applies to all of a given class alike and the classification is made on a reasonable basis." *Glossip*, 411 S.W.3d at 808 (quoting *Savannah R-III Sch. Dist. v. Pub. Sch. Ret. Sys. of Mo.*, 950 S.W.2d 854, 859 (Mo. banc 1997)).

When a law is based on open-ended characteristics, it is not facially special and is presumed to be constitutional. *Glossip*, 411 S.W.3d at 808. Classifications are open-ended if it is possible that the status of members of the class could change. *Id.* An open-ended law is not special as long as the classification is reasonable. *Id.*

Appellants argue that section 537.296 creates a presumptively unconstitutional closed-ended classification because the statute "classifies on the basis of who the tortfeasors are." Section 537.296 does not create a facially unconstitutional closed-ended classification because providing some protection from nuisance lawsuits for those who devote their property primarily for agriculture creates an open-ended classification based on current land use. This

19

class is open-ended because landowners and land uses can change. Just as a classification based on occupation such as real estate broker, attorney, or an auctioneer is open-ended, classifications based on current land use are open-ended and not facially special because the class is not based on an immutable characteristic. *Kansas City Premier Apartments, Inc., v. Missouri Real Estate Comm'n*, 344 S.W.3d 160, 171 (Mo. banc 2011).

The open-ended classification in this case is reasonable. As established above, section 537.296 advances the legitimate state purpose of promoting the agricultural economy. Section 537.296 is not an unconstitutional special law.

## IV. The trial court did not err in granting judgment on Appellants' claims for negligence and conspiracy against Cargill

Appellants' final argument is that the trial court erred by entering judgment on their negligence and conspiracy claims. Appellants assert that they are entitled to recover "use and enjoyment" damages pursuant to a negligence or conspiracy cause of action. They also assert that the undisputed facts are insufficient to show that Cargill was not vicariously liable for Bohr's alleged negligence.

Section 537.296.6(1) provides that section 537.296 does not "[p]rohibit a person from recovering damages for annoyance, discomfort, sickness, or emotional distress; provided that such damages are awarded on the basis of other causes of action independent of a claim of nuisance." This language means that Appellants can recover their alleged non-economic "use and enjoyment" damages

20

only if their negligence and conspiracy claims are "independent of a claim of nuisance."

The nature of an alleged cause of action is based on the substance of the pleading, not the title. *See Gunter v. City of St. James*, 189 S.W.3d 667, 677-678 (Mo. App. 2006). The substance of Appellants' negligence, conspiracy and vicarious liability claims is that operation of the CAFO created offensive odors and particulates that substantially interfere with the use and enjoyment of their properties. In other words, the negligence, conspiracy and vicarious liability claims are based on the same facts forming the basis of the nuisance claim. Appellants' negligence, conspiracy and vicarious liability claims are not "independent of a claim of nuisance" because those claims are, in fact, dependent on the nuisance allegations. Given the allegations in this case, Appellants' nuisance, conspiracy and vicarious liability claims are inseparable from the nuisance allegations and are barred by section 537.296.6(1).

## V. Conclusion

The judgment is affirmed.

_____
Richard B. Teitelman, Judge

Stith and Draper, JJ., and Journey,
Sp.J., concur; Fischer, J., concurs
in separate opinion filed; Russell,
C.J., and Wilson, J., concur in
opinion of Fischer, J. Breckenridge,
J., not participating.



# SUPREME COURT OF MISSOURI
## en banc

LINDA LABRAYERE AS TRUSTEE OF )
THE DON E. LABREYERE TRUST, )
ET AL., )
                               )
            Appellants, )
                               )
     v. )          No. SC93816
                               )
BOHR FARMS, LLC, ET AL., )
                               )
            Respondents. )

## CONCURRING OPINION

"No man [or woman] should be allowed to be the [judge] who does not understand hogs, or hasn't been around a manure pile."[1]  I do, I have, and I concur in the principal opinion.  Assuming the State has taken property by enacting § 537.296.2,[2] it did so for public use and provided just compensation.  But in my view, there has been no taking.[3]

Prior to the enactment of § 537.296, the common law nuisance cause of action provided for damages due to loss of use and enjoyment.  *Byrom v. Little Blue Valley*

---

[1] Harry S. Truman, who completed one year of law school at the University of Missouri-Kansas City School of Law, my alma mater, suggested this as a requirement to be president of the United States.

[2] Statutory citations are to RSMo Supp. 2013.

[3] This Court may affirm summary judgment on any appropriate theory supported by the record. *Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258, 264 (Mo. banc 2013).  Section 537.296.2 sets out the compensatory nuisance damages recoverable from crop and animal

*Sewer Dist.*, 16 S.W.3d 573, 576 (Mo. banc 2000); *McCracken v. Swift & Co.*, 265 S.W. 91, 92 (Mo. 1924). The appellants argue that the State of Missouri has taken their property because § 537.296 prohibits recovery of use and enjoyment damages from crop and animal producers. They cite *Hoffmann v. Kinealy*, 389 S.W.2d 745, 752-53 (Mo. banc 1965), in which this Court defined "property," for purposes of determining whether a taking has occurred, to include "the right of use and enjoyment" of property.

The takings provisions in the Missouri Constitution are nearly identical to the federal takings protections embodied in the Fifth Amendment,[4] and the appellants do not argue that this Court should interpret the Missouri provisions differently. *See* U.S. Const. amend. V; Mo. Const. art. I, §§ 26, 28; *Kelo*, 545 U.S. at 477-78; *State ex rel. Jackson v. Dolan*, 398 S.W.3d 472, 478 (Mo. banc 2013). Under United States Supreme Court precedent, takings generally fall into three categories: (1) permanent physical invasions of property by the government; (2) governmental deprivations of "all economically beneficial use" of property; and (3) "regulatory" takings of property under the *Penn Central* balancing test. *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538-39 (2005) (emphasis, alterations, citations, and internal quotation marks omitted).

The takings analysis necessarily begins, however, with whether the government's action actually interfered with constitutionally protected property rights, known as the "bundle of rights." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322,

---

producers. Because that provision defeats all of the appellants' claims, I would not reach their challenges to other subsections of the statute, including the separation of powers claim.

[4] The Fifth Amendment Takings Clause applies to the states through the Fourteenth Amendment. *Kelo v. City of New London, Connecticut*, 545 U.S. 469, 472 n.1 (2005).

330 (4th Cir. 2005). If the government has not interfered with this bundle of rights, there has been no taking. *Id.*

Here, the State has not interfered with the appellants' bundle of rights. Section 537.296.2 does not take the appellants' rights to use and enjoy property. It eliminates a category of damages for certain nuisances. The right to seek injunctive relief is still intact. *See Clutter v. Blankenship*, 144 S.W.2d 119 (Mo. 1940); *Edmunds v. Sigma Chapter of Alpha Kappa Lambda Fraternity, Inc.*, 87 S.W.3d 21 (Mo. App. 2002); *Hulshof v. Noranda Aluminum, Inc.*, 835 S.W.2d 411, 419 (Mo. App. 1992). This makes abundantly clear that the State continues to recognize and give effect to the appellants' rights to use and enjoy their property, to the exclusion of crop and animal producers.

The principal opinion states that it is "conceivable that a statute limiting recovery of nuisance damages could sufficiently diminish a landowner's right to recover damages for an unreasonable interference with the use and enjoyment of his or her property that the statute could amount to a regulatory taking . . . ." Slip op. at 10 n.7. Viewing § 537.296.2 as effectuating a taking would be erroneous because it does not infringe on the appellants' bundle of rights. *See Sunrise*, 420 F.3d at 330. Also, unlike in the cases cited by the principal opinion, the State itself did not invade the appellants' land, *see Byrom*, 16 S.W.3d at 575, 577-78 (involving a public sewer district's noxious odors), or attempt to dictate how appellants use their land, *see Hoffmann*, 389 S.W.2d at 746, 753 (involving the denial of a land use permit). The State did not "delegate" the power of eminent domain to private crop and animal producers, as the appellants contend. And by restricting the nuisance damages recoverable for temporary nuisance, it did not convert

3

that cause of action into one for permanent nuisance—regardless of the analogy drawn previously by this Court, cleverly spun by the appellants, that a permanent nuisance judgment is like a grant of an easement. *See Owen v. City of Springfield*, 741 S.W.2d 16, 18 (Mo. banc 1987).

The State's action here was to enact legislation modifying a common law cause of action. Except as to vested rights, the General Assembly is free to "'design the framework of the substantive law' by abolishing or modifying common law or statutorily based claims." *Kilmer v. Mun*, 17 S.W.3d 545, 550 (Mo. banc 2000); *see also De May v. Liberty Foundry Co.*, 37 S.W.2d 640, 647 (Mo. 1931). When § 537.296 went into effect, the farm had not yet populated its CAFO with swine. The State could not have taken any vested property rights in the appellants' temporary nuisance claims because those claims had not yet accrued. *See Kilmer*, 17 S.W.3d at 550; *De May*, 37 S.W.2d at 647.

In my view, there was no taking. Although I concur in the principal opinion's analyses of private/public use and just compensation, the Court need not reach those issues. Section 537.296.2 sets out the nuisance damages recoverable from crop and animal producers. It does not purport to take the appellants' rights to use and enjoy their property, and the State still recognizes and enforces those rights through injunctive relief. Because the appellants' bundle of rights has not been disturbed, the State has not taken their property. *See Sunrise*, 420 F.3d at 330.

_____

Zel M. Fischer, Judge