

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| MISSOURI CORRECTIONS OFFICERS ASSOCIATION, INC., ET AL., | ) ) ) | WD84917 |
| | ) | |
| Respondents, | ) ) | OPINION FILED: December 6, 2022 |
| v. | ) ) | |
| MISSOURI OFFICE OF ADMINISTRATION, ET AL., | ) ) ) | |
| | ) | |
| Appellants. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Jon Edward Beetem, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Mark D. Pfeiffer, Judge and
Thomas N. Chapman, Judge

Missouri Office of Administration; Sarah Steelman[1], Commissioner of the Office

of Administration, in her official capacity; and Stacy Neal, Director of the Division of

Accounting of the Office of Administration, in her official capacity (collectively, "OA")

appeal the judgment of the Circuit Court of Cole County ("trial court"), following a bench

---

[1] We note that Sarah Steelman is no longer the Director of the Office of Administration and that position is currently held by Kenneth J. Zellers.  However, no substitution of parties has been filed with the court and therefore Sarah Steelman remains a party in her former official capacity.

trial, in favor of Missouri Corrections Officers Association, Inc., Terry Enberg, and Tina Courtway (collectively, "MOCOA") on MOCOA's amended petition against OA. The trial court issued findings of fact, conclusions of law, and judgment ("Judgment") finding that the Emergency Rule and Final Rule (collectively, "Rules") issued by OA were unconstitutional because they infringed on MOCOA's constitutional rights to organize and to bargain collectively, freedoms of speech and association, and equal protection. The trial court also found that OA's decisions in December 2019 to suspend payroll deduction and in March 2020 to deny payroll deductions for MOCOA were unlawful, arbitrary, capricious, and unreasonable. The trial court ordered OA to resume payroll deductions for current Department of Corrections ("DOC") employees who were having MOCOA dues deducted from their pay prior to OA's December 9, 2019, decision to suspend payroll deduction, and the trial court ordered OA to accept new MOCOA payroll deduction applications signed by DOC employees in the future.

OA raises nine points on appeal: OA argues the trial court erred in: (1) finding that OA's December 2019 decision to discontinue MOCOA dues deduction was unlawful under section 536.150[2] because MOCOA did not meet the regulatory requirements for dues deduction in that (a) it could not deduct dues as a labor union because it had no existing labor agreement, (b) it could not deduct dues as an employee association because it was not a "group of state employees," and (c) it could not deduct dues as an employee association because 1 C.S.R. 10-3.010 (2019) does not permit labor unions to be employee

---

[2] All statutory references are to Revised Statutes of Missouri (2016), as currently updated by supplement, unless otherwise indicated.

2

associations; (2) finding that OA's December 2019 decision to discontinue MOCOA's dues deduction was arbitrary, capricious, and unreasonable under section 536.150 because 1 C.S.R. 10-3.010 (2019) required OA to deny dues deductions; (3) finding the Rules violated article I, section 29 of the Missouri Constitution because the Rules did not violate the right to bargain collectively; (4) finding the Rules violated article I, section 8 of the Missouri Constitution because the Rules did not violate union-members' constitutional right to free speech; (5) finding the Rules violated article I, section 9 of the Missouri Constitution because the Rules did not violate union-members' right to freedom of association; (6) finding the Rules violated article I, section 2 of the Missouri Constitution because the Rules did not violate union-members' right to equal protection; (7) finding OA's March 2020 decision denying MOCOA dues deduction was unlawful under section 536.150 because OA's decision was lawful under the Emergency Rule and under 1 C.S.R. 10-3.010 (2019); (8) finding OA's March 2020 decision denying MOCOA dues deduction was arbitrary, capricious, and unreasonable under section 536.150 because the trial court's factual findings do not satisfy the arbitrary and capricious standard; and (9) awarding MOCOA injunctive relief because the requirements for injunctive relief were not met. We affirm the judgment of the trial court.

## Factual Background

MOCOA was established in 2000 as a non-profit corporation to promote the interests and welfare of all corrections officers in Missouri by advocating for favorable legislation, mitigating hazards of employment, improving working conditions, and raising the social standing of its members. Only corrections officers employed by the DOC were

eligible for full membership, however the MOCOA Board of Directors was empowered to pass a resolution allowing auxiliary membership to other persons who actively supported the goals of MOCOA on account of family affiliation, work history, or other reasons.

Under Missouri law, certain groups may request OA to voluntarily have payments from their members' paychecks automatically deducted and remitted toward the funding of those groups. *See* section 33.103. Among the groups eligible to receive such membership funding through automatic payroll deduction are labor unions and employee associations. *See id.* At the time MOCOA was established, Missouri regulations defined each group: a labor union was "an exclusive state employee bargaining representative established in accordance with sections 105.500-105.530[;]" and an employee association was "an organized group of state employees that has a written document, such as bylaws, which govern its activity[.]" 1 C.S.R. 10-4.010(1)(B), (C) (1990). To receive payroll deduction, employee associations, but not labor unions, were required to obtain a minimum of 100 state-employee-signed applications within ninety days of their request to OA for payroll deduction. 1 C.S.R. 10-4.010(2)(F), (H) (1990).

In July 2000, MOCOA filed a request with OA that its members be permitted to voluntarily deduct MOCOA dues from their paychecks. Although MOCOA was not a labor union at the time, OA granted the request for payroll deduction because MOCOA qualified as an employee association. Following the approval of payroll deductions for MOCOA members, OA and DOC, which was responsible for payroll for corrections officers, began deducting MOCOA dues owed by DOC employees pursuant to employee-signed applications. The dues collected were remitted to MOCOA. New DOC employees

4

who signed authorization applications also had MOCOA dues deducted from their paychecks.

In July 2004, Corrections Officers I and II voted to make MOCOA their exclusive bargaining representative pursuant to section 105.525 (2000). Thus, MOCOA became qualified as a labor union under the regulations. MOCOA and DOC entered into their first labor agreement in February 2007 ("2007 Agreement"), which was set to expire in January 2011. Payroll deductions for MOCOA dues continued under the 2007 Agreement, although the agreement did not specify whether dues were being deducted pursuant to MOCOA's status as a labor union or employee association, or both. An internal memo from OA in 2011 regarding payroll deductions for employee associations ("2011 memo") stated that MOCOA was listed as an employee association, although the 2011 memo noted that the accounting department within OA had mischaracterized MOCOA as an employee association. The OA memo stated, "Accounting's files indicate that this group may have been an employee association when the payroll deductions were first set up in 2000. But it is now a union that currently represents state employees. And it is not dually listed in Accounting's records as a union and an employee association." Despite describing MOCOA's status as an employee association as a "mischaracterization" in the 2011 memo, a 2016 Sunshine request to OA requesting a list of employee associations that had payroll deduction authority revealed that MOCOA was listed as an employee association within OA's own records.

The terms of the 2007 Agreement were extended past January 2011 while the parties negotiated a new labor agreement, which was finally agreed upon and entered into in

5

October 2014 ("2014 Agreement"). Payroll deductions for MOCOA dues continued under the 2014 Agreement. When the 2014 Agreement expired in September 2018, DOC and OA declined to extend the terms of the agreement while they negotiated with MOCOA to enter into a new labor agreement. Negotiations between MOCOA, OA, and DOC continued during this litigation, but as of the date of trial no existing labor agreement between the parties had been reached or approved.

In June 2019, OA and MOCOA had not reached a new labor agreement, and OA notified MOCOA that it was terminating dues deduction for employees not in the MOCOA bargaining unit. However, OA continued the dues deduction for roughly 1,300 MOCOA-member employees until December 2019. On December 9, 2019, OA sent a letter to MOCOA that OA was terminating payroll deduction for all MOCOA members. According to OA's letter to MOCOA, "Because the State of Missouri employees represented by MOCOA are not covered by an existing labor agreement, [OA] will no longer make payroll deductions of MOCOA dues from State of Missouri employee compensation." MOCOA responded to OA's letter on December 17, 2019, through its attorney, Chris Grant ("Grant"). Grant asserted that MOCOA was an employee association under the applicable regulation as well as a labor union. Therefore, according to Grant, MOCOA members were still eligible for payroll deduction for MOCOA dues. Grant attached the Sunshine request MOCOA had received from OA in 2016 that listed MOCOA as an employee association to his response. OA's legal counsel responded to Grant by asking MOCOA to provide information regarding any MOCOA auxiliary members that had been admitted pursuant to MOCOA's bylaws. Grant replied that such information was irrelevant, and if OA was

6

asking MOCOA to provide this information, MOCOA would expect to know if other employee associations were required to provide this information to OA as well. In a subsequent e-mail, Grant stated to OA's legal counsel that MOCOA has admitted "about 25 retirees (former corrections officers) who are auxiliary members who pay a reduced amount in dues per year and do not have full-fledged membership rights. They pay this small amount to [MOCOA] directly."

On January 15, 2020, OA's legal counsel informed Grant that MOCOA did not qualify as an employee association because it admitted membership to non-state employees, i.e. the auxiliary members. OA's legal counsel told Grant that OA was considering amending the relevant regulation to expand the definition of employee association to include non-state employee members. However, on January 30, 2020, Grant was informed that OA would not be making that amendment to the rule. Instead, on February 11, 2020, OA filed an Emergency Amendment and Proposed Rule ("Emergency Rule") to "clarif[y] what was originally intended in this rule: that employee associations and labor unions are discrete classifications of vendors under this rule and section 33.103[.]" The Emergency Rule amended the definition of employee association to read, "an organized group of state employees that has a written document, such as bylaws, which governs its activity, and that is not an exclusive bargaining representative for state employees established in accordance with sections 105.500-105.530[.]" MOCOA, which was unaware of the Emergency Rule changing the definition of employee association, had amended its bylaws to remove the provision allowing for auxiliary membership in an attempt to qualify as an employee association under OA's prior interpretation of the

7

regulation communicated to Grant. Accordingly, on February 27, 2020, MOCOA sent OA a written request to resume dues deduction as an employee association based on the removal of auxiliary members. MOCOA attached 130 employee-signed applications for dues deduction to its request.

On March 17, 2020, OA denied MOCOA's request to resume dues deduction because the Emergency Rule amending the definition of employee association went into effect before OA received MOCOA's request to resume payroll deduction, and OA stated that MOCOA did not satisfy the requirement that it submit at least 100 state-employee-signed applications within the 90-day period after MOCOA requested dues deduction.

Prior to OA suspending MOCOA's dues deduction in December 2019, all of MOCOA's corrections officer members, nearly 1,300 members, paid their dues by payroll deduction. Following the dues deduction suspension, MOCOA lost nearly all its revenue. MOCOA set up a Pay-Pal account so that members could contribute directly, but MOCOA's representative, Tim Cutt ("Cutt"), testified that it is difficult to communicate with MOCOA members to encourage them to contribute directly to MOCOA. Without the revenue generated from payroll deduction, MOCOA was forced to reduce its operating staff from three persons to one person.

On March 24, 2020, MOCOA sued OA, alleging that (1) the Emergency Rule[3] was unconstitutional for violating MOCOA's rights to organize and bargain collectively, to free speech, to free association, and to equal protection; (2) OA failed to demonstrate

---

[3] At the time MOCOA filed their amended petition, the Emergency Rule had not yet become final.

8

emergency-rulemaking conditions; and (3) OA's decisions in December 2019 to suspend payroll deductions and in March 2020 to deny payroll deductions as an employee association were unlawful, unreasonable, arbitrary, capricious, and an abuse of discretion under section 536.150. In July 2020, OA adopted the Emergency Rule, making it final, and also amended it to read that insurance companies and credit unions, in additional to labor unions, also cannot be employee associations.

The trial court held a bench trial on MOCOA's amended petition. The trial court issued its Judgment finding that: (1) OA had unlawfully, arbitrarily, and capriciously suspended MOCOA dues deduction from DOC employees in December 2019; (2) the Rules violated article I, sections 2, 8, 9, and 29 of the Missouri Constitution; and (3) OA unlawfully, arbitrarily, and capriciously refused to resume MOCOA dues deduction for DOC employees in March 2020. The trial court ordered OA to resume dues deduction for employees who were having dues deducted in December 2019, and the trial court ordered OA to accept new payroll deduction applications. This timely appeal follows.[4]

## Analysis

### Standard of Review

This appeal involves judicial review of a noncontested administrative decision, which is governed by section 536.150.1. *Sanders v. City of Columbia*, 602 S.W.3d 288, 295 (Mo. App. W.D. 2020). The trial court may determine whether an administrative decision, "in view of the facts as they appear to the court, is unconstitutional, unlawful,

---

[4] Additional facts may be discussed throughout the analysis portion of this opinion, including relevant credibility determinations made by the trial court.

unreasonable, arbitrary, or capricious or involves an abuse of discretion[.]" Section 536.150.1. "On appeal, this Court's review of a noncontested case requires review of the judgment of the trial court and not the agency, and thus the standard of review is the same as in any other court-tried case." *Sanders*, 602 S.W.3d at 296 (internal quotations omitted). Our review, therefore, is governed by Rule 73.01 as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Id.* "The trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Id.* "Accordingly, the appellate court reviews the [trial] court's judgment to determine whether its finding that the agency decision was or was not constitutional, unlawful, unreasonable, arbitrary, capricious, or the product of an abuse of discretion rests on substantial evidence and correctly declares and applies the law." *Mo. Nat. Educ. Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 275 (Mo. App. W.D. 2000). "This Court applies de novo review to questions of law decided in court-tried cases." *Shomaker v. Dir. of Revenue*, 504 S.W.3d 84, 86 (Mo. App. E.D. 2016).

### *Point One*

OA argues the trial court erred in finding OA's December 2019 decision to discontinue dues deduction was unlawful under section 536.150 because MOCOA did not meet the regulatory requirements for dues deduction in that: (1) it could not deduct dues as a labor union because it had no existing labor agreement; (2) it could not deduct dues as an employee association because it was not a group of state employees; and (3) it could not deduct dues as an employee association because labor unions cannot also be employee

10

associations. "Administrative rules and regulations are interpreted under the same principles of construction as statutes." *Matter of Trenton Farms RE, LLC v. Mo. Dept. of Nat. Res.*, 504 S.W.3d 157, 164 (Mo. App. W.D. 2016). "In the absence of a given definition in a regulation, the word or term will be given its plain and ordinary meaning as derived from a dictionary." *Id.* "[I]t is inappropriate to defer to an agency's interpretation of its own regulation that in any way expanded upon, narrowed, or was otherwise inconsistent with the plain and ordinary meaning of the words used in the regulation." *Id.* "Regulations should be interpreted reasonably, and absurd interpretations should not be adopted." *Id.*

The applicable regulation at the time OA suspended MOCOA's payroll deduction for DOC employees defined employee association as "an organized group of state employees that has a written document, such as bylaws, which govern its activity." 1 C.S.R. 10-3.010(6)(A)(3) (2019). A labor union was defined as "an exclusive state employee bargaining representative established in accordance with sections 105.500-105.530[.]" 1 C.S.R. 10-3.010(6)(A)(2) (2019). Although MOCOA fit the definition of a labor union, it did not have an existing labor agreement, which disqualified it from receiving payroll deduction as a labor union because the regulations also defined "dues" as "a fee or payment owed by an employee to a labor organization as a result of and relating to employment in a bargaining unit covered by an existing labor agreement or a payment owed by an employee for membership in an employee association." 1 C.S.R. 10-3.010(6)(A)(5) (2019). Therefore, in 2019, under the then existing regulations, MOCOA

11

was eligible to receive dues through DOC employees' payroll deduction only if it was an employee association.

OA argues MOCOA was not an employee association because it was not a "group of state employees." That is, because MOCOA also permitted twenty-five retirees to be auxiliary members, OA argues, it was a group of both state and non-state employees. Also, according to OA, although MOCOA initially began receiving dues through payroll deduction as an employee association in 2000, it ceased being an employee association when it was recognized as a labor union for Corrections Officers I and II in 2004 following its union election. We disagree with both arguments. Under the plain and ordinary meaning of 1 C.S.R. 10-3.010(6)(A)(3), a group of state employees does not require the group to be composed of *exclusively* state employees in order to be an employee association. Here, MOCOA was receiving dues from roughly 1,300 DOC state employees at the time OA terminated payroll deduction. The twenty-five retirees who were admitted as auxiliary members were not full members of MOCOA, could not vote for directors, paid a reduced fee directly to MOCOA, and used their auxiliary membership for social and insurance purposes. To say that auxiliary membership of a small group of non-state employees in a lower-tier of membership disqualifies the entire group from classification as an employee association would be an absurd result and contrary to the plain meaning of the regulation. We also reject OA's "slippery slope" argument that interpreting employee association as the trial court did will lead to employee associations being diluted by hundreds of non-state employees as auxiliary members. Rather, this Court interprets the regulation in a reasonable manner, and a reasonable interpretation of the regulation

12

recognizes that the overall composition of MOCOA's members as state employees satisfies the regulatory requirement that an employee association be a group of state employees.

Moreover, in December 2019, nothing in the regulations prohibited a group from being both a labor union and an employee association. If a group's characteristics met each definition under the regulation, as MOCOA's did, there was no language to make the types of groups mutually exclusive or require a group to select only one such designation. The regulations provided that "dues" could be deducted from labor unions with an existing labor agreement or from employee associations. 1 C.S.R. 10-3.010(6)(A)(5) (2019). MOCOA did not have an existing labor agreement, but it was still a group of state employees governed by bylaws. Therefore, it qualified as an employee association. Accordingly, the trial court did not misapply the law in finding that the 2019 decision by OA to suspend payroll deductions for MOCOA members as an employee association was unlawful.

Point one is denied.

### Point Two

In OA's second point on appeal, it argues the trial court erred in finding the December 2019 decision to discontinue dues deduction for MOCOA was arbitrary, capricious, and unreasonable because the regulation required it to discontinue payroll deduction because MOCOA was not an employee association. "'Arbitrary and capricious' has been defined in the context of rules and regulations as 'willful and unreasoning action, without consideration of and in disregard of the facts and circumstances.'" *Beverly Enters.-Mo. Inc. v. Dep't of Soc. Servs., Div. of Med. Servs.*, 349 S.W.3d 337, 345 (Mo. App. W.D. 2008). "[A]n administrative agency acts unreasonably and arbitrarily if its findings are not

13

based upon substantial evidence." *Hundley v. Wenzel*, 59 S.W.3d 1, 8 (Mo. App. W.D. 2001). "Moreover, an agency which completely fails to consider an important aspect or factor of the issue before it may also be found to have acted arbitrarily and capriciously." *Barry Serv. Agency Co. v. Manning*, 891 S.W.2d 882, 892 (Mo. App. W.D. 1995) (citing *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which [the legislature] has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Prime Healthcare Servs.-Kan. City, LLC v. Dep't of Health and Senior Servs.*, __S.W.3d__, 2022 WL 3031644, *5 (Mo. App. W.D. 2022).

Here, the trial court did not err in finding that OA's decision to discontinue MOCOA's dues deduction was arbitrary and capricious. In OA's letter to MOCOA on December 9, 2019, OA explained that DOC employees would no longer be able to deduct MOCOA dues from their paycheck because "the State of Missouri employees represented by MOCOA are not covered by an existing labor agreement." The letter made no mention of MOCOA's status, or supposed lack thereof, as an employee association. Yet, in subsequent e-mails between OA's legal counsel and Grant, OA inquired into whether MOCOA had admitted auxiliary members pursuant to MOCOA bylaws. This was the first time OA had ever asked MOCOA about its auxiliary members. After Grant informed OA that MOCOA had admitted twenty-five retirees as auxiliary members, OA stated, after it had already suspended payroll deduction, that MOCOA could not be considered an

14

employee association for this reason. It is clear that OA did not consider MOCOA's status as an employee association before discontinuing its payroll deduction in December 2019, and merely provided this rationale after the fact.

The record contains substantial evidence from which the trial court could find that OA arbitrarily inquired into MOCOA's auxiliary membership in order to justify its prior decision to disqualify it from payroll deduction. When Grant asked OA if it had requested auxiliary membership information from any other employee association, OA's legal counsel did not respond. The trial court found that, between December 9, 2019, and March 17, 2020, OA did not communicate with the three other employee associations participating in payroll deduction to ask whether they admitted non-state employees into membership. These three employee associations, the Missouri State Troopers Association, Transportation Employees Association of Missouri, and the Missouri Probation and Parole Officers Association, all permit lower-level membership to individuals who support the respective purposes of the associations. OA attempted to distinguish its treatment of MOCOA from these three groups by arguing the other groups merely have the authority to admit non-state members while MOCOA actually admitted them. But OA discontinued payroll deduction for MOCOA *before* it knew whether or not MOCOA had actually admitted auxiliary members. The trial court found this distinction to be pretextual. And the trial court found that OA did not communicate with the only employee association that had applied for payroll deduction within the previous ten years, the Correctional Peace Officers Foundation, to determine if it admitted non-state members. OA's representative, Paul Buckley ("Buckley") also testified that OA does not have standard payroll deduction

15

guidelines or procedures regarding the authorization of employee associations. The record shows that OA's interpretation of the regulations and its stated reasons for amending the regulations was a moving target, supporting the trial court's determination that its rationale was pretextual and its decision to suspend MOCOA's payroll dues deductions applied the regulation in an arbitrary and capricious manner.

OA argues that its decision to discontinue payroll deduction for MOCOA dues was rational because it was based on its interpretation of the regulation that classifies MOCOA as a labor union and not an employee association. But it is clear from the record that OA previously understood MOCOA to be an employee association and failed to consider this factor in its suspension of payroll deductions. Even though the 2011 OA internal memo stated that MOCOA had been mischaracterized as an employee association, the 2016 Sunshine request obtained by MOCOA revealed that it remained classified as an employee association in OA's internal records. Despite OA's argument that MOCOA ceased being an employee association in 2004, the record shows two separate occasions in which OA continued to classify MOCOA as an employee association. Yet, OA refused to consider this important factor when terminating MOCOA's dues deduction in December 2019.

The trial court found that OA has provided shifting reasons for discontinuing MOCOA's dues deduction. As discussed previously, OA only provided one reason when it initially discontinued payroll deduction in December 2019, however new and different justifications have emerged throughout the course of this litigation. For example, OA argued before the trial court that the recent Supreme Court decision in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S.Ct. 2448 (2018),

16

played a factor in discontinuing MOCOA's payroll deductions. OA argued that the *Janus* decision exposed OA to the risk of litigation if it continued to deduct dues from employee paychecks for employee associations. The trial court did not find OA credible in this regard. The trial court found that the evidence showed that OA did not rely on *Janus* in suspending MOCOA's payroll deduction. OA suspended two other employee associations' payroll deductions along with MOCOA, and in letters to each group explaining OA's rationale, OA cited the *Janus* decision. But this rationale was never articulated to MOCOA, and OA seemingly argued this justification for suspending MOCOA dues for the first time before the trial court. Therefore, because the trial court did not find OA credible in its argument that it suspended the payroll deduction in response to *Janus*, we do not opine on the extent to which *Janus* applies or does not apply to payroll deduction for MOCOA members. The record contains substantial evidence that supports the trial court's finding that OA's reliance on *Janus* was pretextual, and its suspension of MOCOA's payroll deduction was arbitrary and capricious.

Point two is denied.

### *Point III*

OA argues the trial court erred in finding the Rules violated article I, section 29 of the Missouri Constitution because the rules did not violate the right to collectively bargain. OA argues that because the rules do not impinge on the right of employees to collectively bargain, this Court need not apply any level of judicial scrutiny to our analysis of the Rules; in the alternative, OA argues the Rules are subject to rational basis review, not strict

17

scrutiny, because collective bargaining is not a fundamental right, and the Rules do not severely restrict that right.

The Emergency Rule promulgated by OA, effective February 27, 2020, amended the definition of employee association. According to OA, the Emergency Rule was adopted to "clarif[y] what was originally intended in this rule: that employee associations and labor unions are discrete classifications of vendors under this rule and section 33.103[.]" Emergency Amendment, 45 Mo. Reg. 415 (Mar. 16, 2020) (to be codified at 1 C.S.R. 10-3.010). The new definition defined employee association as "an organized group of state employees that has a written document, such as bylaws, which govern its activity, and *that is not an exclusive bargaining representative for state employees established in accordance with sections 105.500-105.530[.]*"[5] 1 C.S.R. 10-3.010(6)(A)(3) (emphasis added). Under this Emergency Rule, OA refused to resume payroll deduction for MOCOA after it had amended its bylaws to remove the lower-tier of auxiliary membership. The trial court held the Rules violated MOCOA's constitutional right to organize and to bargain collectively because, under strict scrutiny, OA was unable to show that its action was narrowly tailored to further a compelling government interest. The trial court applied strict scrutiny to its review of the Rules because it found that the Rules violated a fundamental right to organize and to bargain collectively; that is, the Rules discriminated against employee associations that wish to exercise their right to organize and bargain collectively

---

[5] When the Emergency Rule became final, the definition of employee association read: "an organized group of state employees that has a written document, such as bylaws, which govern its activity, and that is not a private insurance carrier or company, credit union, or exclusive bargaining representative for state employees established in accordance with sections 105.500-105.530[.]" 1 C.S.R. 10-3.010(6)(A)(3).

by denying them payroll deduction, but it allowed payroll deduction for employee associations that do not collectively bargain. OA argues this was error because, although the right to collectively bargain is explicitly mentioned in the Missouri constitution, it is not a fundamental right subject to strict scrutiny review. Instead, OA argues article I, section 29 is a mere procedural right that guarantees employees may engage in a particular process, but it does not confer any substantive rights whose violation would subject them to strict scrutiny.

As an initial matter, OA's arguments on appeal are directed at the right "to bargain collectively" and provide little discussion of the rest of article I, section 29, which, in full, provides: "That employees shall have the right to organize and to bargain collectively through representatives of their own choosing." OA takes the puzzling position that "[t]he plain language of article I, section 29 only guarantees the right to 'bargain collectively.'" This is not an accurate assessment of article I, section 29, which clearly provides an organizational right in addition to the right to bargain collectively. "The purpose of article I, section 29 is 'to protect employees against legislation or acts which would prevent or interfere with their organization and choice of representatives for the purpose of bargaining collectively.'" *Missouri Nat'l Educ. Ass'n v. Missouri Dep't of Labor and Indus. Relations*, 623 S.W.3d 585, 590-91 (Mo. banc 2021) (quoting *Quinn v. Buchanan*, 298 S.W.2d 413, 419 (Mo. banc 1957), *overruled on other grounds by E. Mo. Coal. of Police, Fraternal Ord. of Police, Lodge 15 v. City of Chesterfield*, 386 S.W.3d 755, 762 (Mo. banc 2012)). Although the trial court's judgment was based in part on the discriminatory treatment of organizations that desired to bargain collectively as opposed to employee organizations

19

that did not bargain collectively, the trial court's judgment made clear that OA's discriminatory treatment of such employee organizations also interfered with the right of employees to *organize* in the form of a labor union for the purpose of bargaining collectively. OA's arguments on appeal would have us ignore this organizational right.

In an equal protection challenge, we apply the traditional two-step analysis. "The first step requires a court to identify the classification at issue to ascertain the appropriate level of scrutiny[,]" and the second step involves applying the appropriate level of scrutiny to the facts. *Labrayere v. Bohr Farms, LLC*, 458 S.W.3d 319, 331 (Mo. banc 2015). As we previously noted, prior to OA's promulgation of the Rules at issue before us, a group could be both a labor union and an employee association if it satisfied the plain and ordinary meaning of each classification in the regulation. The Rules amended the definition of employee association and thus drew a distinction between employee associations that collectively bargain and employee associations that do not collectively bargain. Those that do not collectively bargain may benefit from payroll deduction while employee associations that were also labor unions, but do not have an existing labor agreement, may not benefit from payroll deduction. In other words, an employee association that would be eligible for the benefit in all other respects is deprived of such benefit due to the exercise of the constitutional right to organize and to bargain collectively. The right to organize and to bargain collectively is impinged, therefore, because the Rules provide a benefit only available to employee associations that do not collectively bargain and interfere with the right of employees to organize for the purpose of collective bargaining. We reject OA's argument that the Court need not apply any judicial scrutiny to the Rules. Instead, we must

determine which level of scrutiny applies to government action that discriminates based on the constitutional right to participation in collective bargaining.

"In terms of equal protection, a statute [or regulation] that neither creates suspect classifications nor impinges on a fundamental right will withstand constitutional challenge if the classification bears some rational relationship to a legitimate state purpose." *Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503, 512 (Mo. banc 1991). "If the challenged law draws a distinction on the basis of a suspect classification or curtails the exercise of a fundamental right, then strict scrutiny applies." *Labrayere*, 458 S.W.3d at 331. "A *fundamental right*, under this analysis, is a right 'explicitly or implicitly guaranteed by the Constitution.'" *Mahoney*, 807 S.W.2d at 512 (quoting *San Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-34, 93 S.Ct. 1278, 1296-97, 36 L.Ed. 2d 16 (1972)). "The fundamental rights requiring strict scrutiny are the rights to interstate travel, to vote, free speech, and other rights explicitly or implicitly guaranteed by the constitution." *Labrayere*, 458 S.W.3d at 331-32. If strict scrutiny applies, the law will be upheld only if the government shows "it is narrowly tailored to serve a compelling state interest." *Priorities USA v. State*, 591 S.W.3d 448, 453 (Mo. banc 2020).

The right to organize and to bargain collectively is explicit in the constitution. The Missouri constitution provides, "[E]mployees shall have the right to organize and to bargain collectively through representatives of their choosing." Mo. Const. art. I, section 29. "Missouri's public sector labor law, codified in section 105.500, *et seq.*, creates a procedural framework for collective bargaining for public employees[.]" *Am. Fed'n of Teachers. v. Ledbetter*, 387 S.W.3d 360, 363 (Mo. banc 2012). "[B]ecause article I, section

21

29 of Missouri's constitution imposes on employers a duty to meet and confer with collective bargaining representatives, employers must also engage in the bargaining process in good faith." *Id.* at 367; *see also E. Mo. Coal. of Police*, 386 S.W.3d at 762 ("[A]rticle I, section 29 of the Missouri Constitution imposes on employers an affirmative duty to bargain collectively."). "If public employers were not required to negotiate in good faith, they could act with the intent to thwart collective bargaining so as never to reach an agreement--frustrating the very purpose of bargaining and invalidating the right." *Id.* at 364. As previously discussed, article I, section 29 protects "employees against legislation or acts which would prevent or interfere with their organization and choice of representatives for the purpose of bargaining collectively." *Missouri Nat'l Educ. Ass'n*, 623 S.W.3d at 590-91 (quoting *Quinn*, 298 S.W.2d at 419). In *Quinn*, which was later overruled in part due to an erroneously narrow interpretation of the scope of the rights declared in article I, section 29, the Missouri Supreme Court made clear that article I, section 29 "is a declaration of a fundamental right of individuals." *See Quinn*, 298 S.W.2d at 418; *see also E. Mo. Coal. of Police*, 386 S.W.3d at 761-62 (overruling *Quinn*'s holding that article I, section 29 provides for no affirmative duties due to *Quinn*'s erroneously narrow reading of the limits of article I, section 29).

As other state courts have found, when a right is explicit in the state constitution, it is a fundamental right, and government action that discriminates on the basis of exercising this right is subject to strict judicial review. *See Hillsborough Cty. Gov't Emps. Ass'n, Inc. v. Hillsborough Cty. Aviation Auth.*, 522 So.2d 358, 362 (Fla. 1988) ("The right to bargain collectively is, as part of the state constitution's declaration of rights, a fundamental right);

22

*Hernandez v. State of New York*, 173 A.D.3d 105, 114 (N.Y. App. Div. 2019) ("[W]e are firmly convinced that the constitutional right bestowed upon 'employees' in this state 'to organize and to bargain collectively through representatives of their own choosing' (NY Const, art I, [section] 17) is a fundamental right, and that any statute impairing this right must withstand strict scrutiny[.]"); *George Harms Const. Co., Inc. v. New Jersey Tpk. Auth.*, 644 A.2d 76, 87 (N.J. 1994). We find this precedent persuasive. Accordingly, because the Rules discriminate based on an employee association's exercise of the fundamental right to organize and to bargain collectively, OA must show that its Rules are narrowly tailored to further a compelling governmental interest.

OA must show that the Rules are narrowly tailored to further a compelling governmental interest, which it failed to do. OA argues the government's compelling interest is administrative effectiveness and efficiency. OA argues, "[E]stablishing clear terms and conditions about dues deduction in a contract lessens the likelihood of litigation, which increases government efficiency and effectiveness by, among other things, lessening the amount of Missouri-citizens' tax dollars spent defending State action." OA's stated interests, in the context of this case, are unpersuasive. MOCOA members have benefitted from payroll deduction for nineteen years without interruption, even at times when MOCOA did not have an active labor agreement with DOC or the state. The record does not reflect that, by passing the Rules, OA has contributed toward administrative effectiveness and efficiency. In fact, in the event OA and MOCOA reach a new labor agreement, OA will presumably resume payroll deduction under MOCOA's status as a labor union with an existing labor agreement, a potentially costly undertaking that would

23

have been unnecessary but for OA's suspension of MOCOA's payroll deduction in the first place. Because the application of strict scrutiny depends on context, including the controlling facts, *see State v. Merritt*, 467 S.W.3d 808, 813 (Mo. banc 2015), we do not believe, on this record, the Rules are narrowly tailored to achieve governmental efficiency.[6]

On appeal, OA provides an additional rationale for promulgating the Rules to deny MOCOA payroll deduction. OA asserts that it wished to incentivize MOCOA to reach a new labor agreement by withholding payroll deduction. According to OA, "Unions often obtain benefits from collective bargaining, including the ability to deduct dues. Thus, this Court should not hold that incentivizing a union to agree with the State violates article I, section 29." Notwithstanding the fact this argument was not presented to the trial court, this admission by OA underscores the targeted nature of the Rules to deny MOCOA a benefit it was entitled to receive under the regulations during any period of contract negotiations. This aligns with Buckley's testimony, in which he stated that, if MOCOA wanted to restart its dues, it must either obtain a labor agreement or cease being a labor union. In this regard, we agree with the trial court that the "Rule impermissibly tends to

---

[6] OA argues the recent Missouri Supreme Court case, *American Federation of State, County and Municipal Employees, AFL-CIO, Council 61 v. State*, 653 S.W.3d 111 (Mo. banc 2022) (hereinafter, "*American Federation*"), compels this Court to find that OA's promulgation of the Rules was lawful because the Rules do not prohibit a labor union from negotiating with its employer in good faith. The Court in *American Federation* held that Senate Bill (S.B.) 1007, which required all non-merit employees to be employed at-will, did not violate article I, section 29 because S.B. 1007 "merely limits the terms and conditions of employment the State is authorized to bargain." *Id.* at 126. This case is distinguishable, however, because OA has determined who may receive a certain governmental benefit based on a group's desire to participate in collective bargaining. Unlike *American Federation*, the Rules at issue do not restrict the substantive terms about which MOCOA may negotiate with the state in its ongoing negotiations for a new CBA. Our task, therefore, is to determine whether OA's action is related to a government interest according to the applicable standard of judicial review. *American Federation* is silent on this issue. *See id.* at 125 n.10. Because the right to organize and collectively bargain is explicitly addressed in the Missouri constitution, OA must show the Rules are narrowly tailored to further a compelling government interest, which, on this record, it did not do.

24

coerce employees into accepting bargaining concessions or seeking to decertify their union which is rendered impotent by the discriminatory withdrawal of dues deduction authority." *See Missouri Nat'l Educ. Ass'n*, 623 S.W.3d at 591 ("Inherent in this freedom of choice is that coercion from any source is a denial of this right and a direct infringement on it." (internal quotations and alterations omitted)). The practical result of the Rule is to give OA an unfair advantage in the negotiations by starving the labor union for dues funding during the contract negotiations process. OA has failed to meet its burden of showing that its action was narrowly tailored to further a compelling governmental interest. Accordingly, the trial court did not err in finding that the Rules violated MOCOA's constitutional right to organize and to bargain collectively under an equal protection analysis.

Point three is denied.

### *Points IV-VI*

In points IV, V, and VI, OA argues the trial court erred in finding that the Rules violated MOCOA's constitutional rights to freedom of speech, freedom of association, and equal protection, respectively. In each argument, OA asserts that the Rules do not violate MOCOA's constitutional rights because the Rules merely regulate conduct by distinguishing labor unions that have collective bargaining agreements from labor unions that do not have collective bargaining agreements.

OA's arguments appear to misunderstand both the nature of MOCOA's claims against OA and the trial court's Judgment. MOCOA did not allege, and the trial court did not find, that the Rules distinguished labor unions based on whether or not they have an

25

existing labor agreement. Rather, the trial court found that the Rules distinguish *employee associations* that wish to collectively bargain from *employee associations* that do not collectively bargain. The Rules allowed employee associations that do not collectively bargain to benefit from payroll deduction, but prohibits employee associations that do collectively bargain from receiving the benefits of payroll deduction. And because the right to organize and to bargain collectively is a fundamental right protected by the Missouri constitution, laws that discriminate on the basis of the exercise of that right are subject to strict scrutiny. *See Labrayere*, 458 S.W.3d at 331. The trial court found, "In amending the definition of 'employee association' to exclude unions established in accordance with Missouri's public sector labor law, the Rule denies a state benefit (payroll deduction) to members of an employee association who wish to be represented by that association in collective bargaining, while preserving it for members of an employee association who do not bargain collectively." OA's points relied on misstate the trial court's Judgment. Furthermore, we have already addressed the merits of OA's points regarding the applicable standard of judicial review afforded to laws that discriminate on the basis of an exercise of a fundamental right.

Points IV-VI are denied.

### Points VII-VIII

In OA's points VII and VIII, OA argues the trial court erred in holding the March 2020 decision to deny MOCOA's request to resume payroll deduction was unlawful, arbitrary, capricious, and unreasonable because the Emergency Rule constitutionally prevented labor unions from deducting dues as employee associations, MOCOA was

26

unable to deduct dues as an employee association under 1 C.S.R. 10-3.010 (2019), and MOCOA did not obtain either 100 employee signatures or 100 signed employee-applications within the requisite 90-day window. The success of OA's arguments rests on the disposition of points I-III. Because we have already found that MOCOA was an employee association as well as a labor union, MOCOA did not need to request OA to resume payroll deduction in March 2020. Further, MOCOA did not need to obtain 100 signed employee-applications because it had already qualified as an employee association under the applicable regulation. And, because the Rules are unconstitutional, in that they impermissibly discriminate against MOCOA's constitutional right to collectively bargain, OA's reliance on the Rules to deny MOCOA's request to resume payroll deduction is without merit.

Points VII and VIII are denied.

### Point IX

OA argues the trial court erred in granting injunctive relief because the requirements for equitable injunctive relief have not been met, in that (a) OA did not act improperly; (b) MOCOA failed to show irreparable harm; and (c) the injunction was against the public interest. Even if MOCOA prevails on points I-III, OA argues, injunctive relief is still improper because automatically reinstating dues deductions for employees having dues deducted in December 2019, as the trial court ordered, threatens to violate those employees' First Amendment rights, which require that "employees clearly and affirmatively consent before any money is taken from them." App. Br. 60 (quoting *Janus*, 138 S.Ct. at 2486).

27

OA suggests that the proper response, if MOCOA prevails on points I-III, is to allow MOCOA to re-apply with the requisite 100 signatures and consents. We disagree.

In accordance with section 536.150, "the administrative agency's decision may be reviewed by an action for an injunction, certiorari, mandamus, prohibition, or another appropriate suit." *State ex rel. Swoboda v. Mo. Comm'n on Hum. Rts.*, 651 S.W.3d 800, 805 (Mo. banc 2022). "[A] party seeking a permanent injunction must show only irreparable harm and a lack of adequate remedy at law." *Karney v. Dep't of Lab. & Indus. Relations*, 599 S.W.3d 157, 167 (Mo. banc 2020). Here, the trial court found that MOCOA was receiving nearly $13,000 per month in dues revenue before payroll deduction was terminated in December 2019. Following the termination of payroll deduction for DOC employees, MOCOA lost nearly all of its income. The trial court found that it is difficult for MOCOA to communicate with corrections officers, and DOC employees wish to continue paying dues by payroll deduction. MOCOA was forced to reduce its staff from three employees to one employee who manages all the work previously done by three MOCOA staff members. The trial court found that despite cutting expenditures, MOCOA's bank account balance has declined by around 90% since the end of November 2019. The trial court found that MOCOA lacks an adequate remedy at law, and as previously discussed, the trial court found that OA's reliance on *Janus* in suspending payroll deduction was not credible. The trial court ordered OA to continue payroll deduction for DOC employees who had MOCOA dues deducted from their pay prior to December 2019 and to begin accepting new payroll deduction applications. The trial court did not err in issuing injunctive relief.

28

Point IX is denied.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
Gary D. Witt, Judge

All concur